In the Matter of the Accounting of THE FARMERS' LOAN
  AND TRUST COMPANY, as Trustee under the Will of
  CHARLES W. DURANT, Deceased, Respondent.

RAY D. BOWERS et al., Appellants; HENRY DEARBORN,
  as Guardian of GEORGE S. DEARBORN, 2d, et al.,
  Respondents.

Will — meaning of word " issue " — presumption favoring
per capita distribution must give way to intent of testator —
frequent use of words indicating that equality of distribution
was dominant in testator's mind sufficient to overcome pre-
sumption and indicate that testator intended a per stirpes
distribution.

1. It is undoubtedly the general rule that unless some other meaning
is given to it by the context, the word " issue " is not confined to
children, but includes descendants in any degree, and that there is a
presumption favoring a *per capita* distribution. This presumption
yields, however, to a very faint glimpse of a different intention, and
must give way to the manifest intent of the testator.

2. Testator by his will directed payment to a daughter for life of
the income arising from a trust fund and upon her death " leaving
lawful issue her surviving, then to pay over to such issue the principal
of such share so devised in trust to be equally divided between them."
The daughter subsequently died leaving five children and two grand-
children, sons of a living daughter, surviving her. The Appellate
Division held that each of the grandchildren is entitled to share
equally with the children of the *cestui que trust* in the distribution of
the trust fund. Upon examination of the will, *held*, error. It appears
that equality of distribution was the dominant thing in the testator's
mind, which is sufficient evidence not only to overcome the presump-
tion attaching to the word " issue," but to indicate that the testator
intended a *per stirpes* and not a *per capita* distribution. (*Matter of
Farmers' Loan & Trust Co.*, 213 N. Y. 168, 171; *Matter of Union Trust
Co.*, 170 App. Div. 176, 178; affd., 219 N. Y. 537, followed.)

*Matter of Farmers' Loan & Trust Co.*, 193 App. Div. 80, reversed.

(Argued March 1, 1921; decided April 19, 1921.)

APPEAL from an order of the Appellate Division of
the Supreme Court in the first judicial department,
entered September 23, 1920, modifying and affirming as

[231 N. Y. 41] Points of counsel. [April,

modified a decree of the New York County Surrogate's Court settling the accounts of the trustee under and construing the will of Charles W. Durant, deceased.

*Charles F. Brown, Arthur Sutherland* and *Henry De Forest Weekes* for Ray D. Bowers et al., appellants. The direction to the trustee contained in the 9th paragraph of the will of Mr. Durant that "upon the death" of the testator's daughter Estelle "leaving lawful issue her surviving to pay over to such issue the principal of such share so devised in trust to be equally divided between them," should be construed as directing a division among such issue *per stirpes* and not *per capita*. (*Ferrer* v. *Pyne,* 81 N. Y. 281; *Vincent* v. *Newhouse,* 83 N. Y. 508; *Matter of Union Trust Co.,* 170 App. Div. 176; 219 N. Y. 537; 220 N. Y. 657.)

*Lawrence Millet* for Margaret D. Bowers, respondent. The controlling element of testamentary construction is the intention of the testator which is to be gathered from the testamentary scheme appearing from the entire will. (*Clark* v. *Kittenplan,* 63 Misc. Rep. 122; *Soper* v. *Brown,* 136 N. Y. 244; *New York Life Ins. & Trust Co.* v. *Phelps,* 106 Misc. Rep. 687; *Matter of Keogh,* 112 App. Div. 414; 186 N. Y. 544.) The presumption favoring a *per capita* distribution is overthrown by slight evidence of a contrary intention. (*Schmidt* v. *Jewett,* 195 N. Y. 486; *Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125; *Ferrer* v. *Pine,* 81 N. Y. 281; *Vincent* v. *Newhouse,* 83 N. Y. 505; *Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168.)

*Thomas B. Gilchrist* for respondent. It is the settled law of this state that a bequest to the "issue" of a person requires a *per capita* distribution of the fund in equal shares among all the living descendants of such person, regardless of the survival of parents falling within the same class, unless a contrary intent appears in the

will. (*Soper* v. *Brown*, 136 N. Y. 244; *Matter of Lawrence*, 181 N. Y. Supp. 498; *Schmidt* v. *Jewett*, 195 N. Y. 486; *Drake* v. *Drake*, 134 N. Y. 220; *Chwatal* v. *Schreiner*, 148 N. Y. 683; *Matter of Bauerdorf*, 77 Misc. Rep. 656; *Freeman* v. *Parsley*, 3 Ves. Jr. 421; *Matter of Farmers' L. & T. Co.*, 163 App. Div. 533; 213 N. Y. 168; *Matter of Union Trust Co.*, 170 App. Div. 176; 220 N. Y. 657.) By the use of the words " to be equally divided " the testator emphasized his intention that the distribution under article 9 should be made *per capita* and not *per stirpes*. (*Matter of F. L. & T. Co.*, 163 App. Div. 533; 213 N. Y. 174; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Murphy* v. *Harvey*, 4 Edw. Ch. 136; *Matter of Verplanck*, 91 N. Y. 439; *Stevenson* v. *Lesley*, 70 N. Y. 512; *Bodine* v. *Brown*, 12 App. Div. 335; *Matter of Griswold*, 42 Misc. Rep. 230; *Graves* v. *Graves*, 55 Hun, 58; *Clark* v. *Lynch*, 46 Barb. 68; *Collins* v. *Hoxie*, 9 Paige, 81.) Nowhere in the will of Charles W. Durant is any intent expressed or properly to be inferred that the word " issue " was used in article 9 of the will as synonymous with the word " children " or as importing a *per stirpes* distribution among the descendants of the life beneficiary; the presumption 'in favor of a *per capita* distribution arising from the use without qualification of the word " issue " and the words " to be equally divided between them " cannot be overcome. (*Freeman* v. *Parsley*, 3 Ves. Jr. 421.)

McLAUGHLIN, J. Charles W. Durant died in 1885, leaving him surviving five children and certain grandchildren. His wife predeceased him. He left a last will and testament and codicil thereto, which were admitted. to probate by the Surrogate's Court of the county of New York, and letters testamentary issued to one of the executors therein named. By his will he gave his entire residuary estate to his executors in trust to invest and keep invested during the life of his wife and to

annually pay to her the income therefrom up to a certain amount, and if it exceeded the amount named, then to divide such surplus equally among his five children. Upon the death of his wife he gave to each of his grandchildren· then living " in remembrance of me " one thousand dollars, and then directed that the balance of the residuary estate be divided into five equal parts, one of which he gave to each of his sons Charles, Frederick and Howard; one to the Union Trust Company of New York, in trust, to invest and keep invested and pay the income therefrom to his son Thomas during his natural life; and the remaining fifth part of said residuary estate he disposed of by the ninth clause, the construction of which is all that is here involved. This clause reads:

" Ninth. I give, devise and bequeath .one other fifth part of said rest, residue and remainder of my estate unto my son Frederick C. Durant in trust; to safely invest the same  *  *  *  and ·to apply the income thereof to the sole and separate use of my daughter Estelle, now the wife of Henry C. Bowers, during her natural life free from the debts and control of her husband, and upon the death of my said daughter leaving lawful issue her surviving, then to pay over to such issue the principal of such share so devised in trust to be equally divided between them."

The testator's son Frederick, named as trustee in the clause quoted, renounced the appointment, and the Farmers Loan and Trust Company was appointed trustee in his place.

The daughter Estelle, described as the wife of Henry C. Bowers, became, after his death, the wife of John A. Weekes. She died in December, 1918, leaving her surviving five children, three by her first marriage and two by the second, and two grandchildren, sons of one of her daughters. After her death the Farmers Loan and Trust Company, as trustee of the trust created by the clause quoted, instituted a proceeding to have its

accounts judicially settled and to obtain a decree directing the manner of distribution of the trust fund among the persons entitled thereto. The citation was duly served upon all of the children of Mrs. Weekes and also upon her grandchildren, George Samuel Dearborn, 2d, and Henry Dearborn, Jr., both of whom were infants under the age of twenty-one years. Upon the return of the citation, the infants, by guardian, each claimed a one-seventh part of such trust fund upon the basis of an equal *per capita* distribution thereof among the seven persons constituting the " issue " of Mrs. Weekes living at the time of her death. The claim was contested by the five children of Mrs. Weekes, each of them claiming a *per stirpes* distribution, or an equal one-fifth share of such estate, to the exclusion of the two grandchildren.

The surrogate held that the word " issue " as used in the ninth clause of the will of the testator included only the five children of Mrs. Weekes and did not include her two grandchildren; and that the fund should be distributed equally among the five children, to the exclusion of the grandchildren. A decree of the Surrogate's Court was entered to this effect, from which an appeal was taken to the Appellate Division by the guardian of the two infant grandchildren, and that court modified the decree appealed from (one of the justices dissenting) by holding that each of the grandchildren was entitled to share equally with the children of Mrs. Weekes in the distribution of the trust fund. From the determination thus made the children of Mrs. Weekes appealed to this court.

I am of the opinion that the determination of the question presented by the appeal is controlled by our decisions in *Matter of Farmers Loan & Trust Co.* (213 N. Y. 168, 171) and *Matter of Union Trust Co.* (170 App. Div. 176, 178; affd., 219 N. Y. 537). In reaching this conclusion I have not overlooked the authorities cited by the respondent.

In the *Farmers Loan & Trust Co.* case the provision of the will under consideration was: " I give, devise and bequeath what would have been his or her share, if living, to his or her issue, if any, such issue to take equally what would have been the parent's share." The court held that the fair meaning of this provision was that the issue were to take by right of representation, and that the distribution should be made *per stirpes* and not *per capita*.

In the *Matter of Union Trust Co.* case the provision of the will under consideration was: " I give, devise and bequeath the share in my said real and personal estate theretofore held in trust for her in equal portions unto her then surviving issue, if any; or, if no such issue shall then survive, I direct that her said share shall be added to the share then held in trust for my other daughter, if she shall then survive; or, if not, then I give, devise and bequeath the same in equal portions to her issue, if any then surviving." The question there presented for determination was whether a granddaughter whose mother was living was entitled to share in the estate. It was held that she was not; that a *per stirpes* division should be made instead of a *per capita*, as otherwise there would not be the equality of distribution which the testator intended.

It is undoubtedly the general rule, as stated in *Matter of Farmers Loan & Trust Co.* (*supra*), that unless some other meaning is given to it by the context, the word " issue " is not confined to children, but includes descendants in any degree, and that there is a presumption favoring a *per capita* distribution. (*Schmidt* v. *Jewett,* 195 N. Y. 486; *Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125.) This presumption, however, yields to " a very faint glimpse of a different intention." (*Ferrer* v. *Pyne,* 81 N. Y. 281; *Vincent* v. *Newhouse,* 83 N. Y. 505.)

Here there is sufficient evidence not only to overcome the presumption, but to indicate that the testator intended a *per stirpes* and not a *per capita* distribution. Such

intention is shown by the frequent use of the words " to be equally divided between them; " " equally to be divided between them; " or " in equal shares." These words, or some of them, are used in the third, eighth, ninth, tenth, fifteenth and sixteenth paragraphs of the will, and also in the codicil. Equality of distribution was the dominant thing in the testator's mind. Thus, he provided for equality among his children in the division of the surplus income; in the *corpus* of his estate not only in the primary gift of one-fifth to each, but in the alternative gift in case the primary gift to any child failed to take effect; in the gift to his grandchildren; and in the direction for distribution of the *corpus* of the trust estate created by the ninth clause of his will for the benefit of the daughter Estelle.

It is true there was a discrimination in respect to the children of the son Thomas, but this in no way obscures the testator's intent as to the disposition which he desired to make of his estate, which was one of equality.

This intent would be defeated by a construction which would permit great grandchildren to share in the fund, their parent being still alive. It would produce not equality, but just the contrary. It would give Mrs. Dearborn and her two children one share each, or three-sevenths of the estate, while her brothers and sisters would receive four-sevenths, or one share each.

A case in many respects much like the present one is *Dexter* v. *Inches* (147 Mass. 324). There, a testator gave his estate in equal shares to eight children and provided that in case of the decease of either leaving issue before receiving a share, " such issue shall represent and take the parent's share." Seven of the children were to take their shares outright, but the share of one son was put in trust, such share to go at his decease, if he left no widow, to his " issue." The son died leaving no widow, but leaving three children and also grand-children. It was held that the gift " to issue " after the

death of the son, though not stated to be to them by right of representation, must be held to have the same meaning as the gift to " issue " where the son died before the testator, and hence that the issue took *per stirpes*. HOLMES, J., who delivered the opinion of the court, said: " Undoubtedly ' issue ' may mean, and in this clause does mean, more than children. If one child of Charles had died at any time leaving children living at Charles' death, we will assume that they would not have been excluded. * * * The issue of Charles would have taken by way of representation in one event. If Charles had died ' before the receipt of his share ' his issue would have ' represented ' him by the words of the will. There is no reason for issue (the same word) taking the same sum otherwise than by way of representation in the other event, which has happened. If the context of the clause which we have to construe does not, of itself, show clearly in what sense the testator used the word, the alternative limitation makes it plain. We are of opinion that the word ' issue ' as here used means descendants, taking by way of representation."

The clause of the will here under consideration should receive a similar construction. The *per capita* rule to which reference has already been made must give way to the manifest intent of the testator.

The order of the Appellate Division, so far as appealed from, should be reversed, and the decree of the Surrogate's Court affirmed, with costs to appellants payable out of the estate.

CARDOZO, J. (concurring). I vote with Judge Mc-LAUGHLIN for distribution *per stirpes* because only thus do we keep the will consistent in its terminology and coherent in its plan and structure. We keep it consistent in its terminology, for otherwise the word " issue " means different things in different paragraphs. We keep it coherent in plan and structure, for otherwise there is

discrimination, beyond the limits of probable intention, in the treatment of descendants. Either of these considerations might be inadequate if viewed alone. Together they become persuasive.

I have said that distribution *per stirpes* makes the terminology of the will consistent. The need of preserving uniformity becomes apparent when we leave the subdivisions dealing with the daughter's share and go back to the subdivisions dealing with the gifts to others. On the death of the testator's wife, three sons, Charles, Frederick and Howard, are to receive their shares outright. The possibility existed that they might die in the lifetime of the testator before the gift became effective. In that event, the statute, prohibiting a lapse, would put their issue in their place, and divide the gift *per stirpes* (Decedent Estate Law, secs. 29, 83, 98; Consol. Laws, ch. 13). We are not left to mere presumption in imputing to the testator knowledge that issue would be substituted. He makes his knowledge plain by adding a provision disposing of the shares in the event that no issue are in being. " Should either of my said sons last mentioned die leaving no lawful issue him surviving, then I give, devise and bequeath the said one-fifth share of the son so dying to and among his brothers and sisters him surviving in equal shares." In the same spirit of caution, he makes provision, after creating the trust for the benefit of his daughter with remainder to her issue, that in case of her death without issue there shall be division among her brothers. The vocabulary of the testator must, therefore, have been as inconstant as his plan was incoherent if he meant that there should be adherence, in the administration of this trust, to the rule of *per capita* division. He was willing, in that view, to have issue take *per stirpes* if they were substituted for the sons, and *per capita* if, in like circumstances, they were substituted for the daughter. I know that what

we speak of as the intention of the testator is often, in reality, the intention of the draftsman of the will, if, indeed, the situation, afterwards arising, was within the range of thought at all. I think we can hardly err, however, in imputing the desire alike to draftsman and to signer that the same words should preserve the same meaning through the successive paragraphs of the instrument which one drafted and the other signed (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 175). Consistency will, indeed, be sacrificed where intention, as revealed in context or surroundings, will thereby be promoted. The sacrifice will not be made to uphold a rule of distribution which yields to a " faint glimpse " of a contrary desire (*Ferrer* v. *Pyne*, 81 N. Y. 281, 284; *Matter of Farmers' Loan & Trust Co., supra; Petry* v. *Petry*, 186 App. Div. 738; 227 N. Y. 621).

In emphasizing inconsistencies of phrase, I have exposed incongruities of purpose. The variable word is seen as the reflection of the variable mind. Yet the mind that conceived this will worked simply and directly. A dominant purpose, easily understood, has been consistently maintained. The purpose was to restrict the daughter to a life estate, to restrict also in divers ways the share assigned to Thomas, and subject to those exceptions to treat the descendants all alike. There is no trace of a desire that " issue " should be substituted in accordance with one formula of division when succeeding to one share, and in accordance with a different formula when succeeding to another. Applied to such a will, the *per capita* rule leads to incoherence and disorder. Division *per stirpes* gives unity and system.

The order of the Appellate Division should be reversed, and the surrogate's decree affirmed.

HISCOCK, Ch. J., CHASE, POUND, CRANE and ANDREWS, JJ., concur with McLAUGHLIN, J.; CARDOZO, J., also reads concurring opinion, in which all concur.

Order reversed, etc.