UNITED STATES TRUST COMPANY OF NEW YORK, as Substituted Trustee of the Trusts Created by the Last Will and Testament of ELLA S. HOFFMAN, Deceased, Plaintiff, *v.* OLGA BAES, ALBERT EDWARD OSWALD ORMSBY, AIMEE B. MARSH, as Sole Surviving Executrix, etc., of ALICE IVES REID, Deceased, and AIMEE B. MARSH, as Executrix, etc., of CORA MARSH, Deceased, Defendants.

Supreme Court, New York Special Term, November 25, 1924.

Wills — construction — will, after directing that upon death of testatrix's daughter specific trust fund should be paid to said daughter's "issue," if any be then living, provided for creation of second trust fund for benefit of said daughter, upon her death for benefit of granddaughter with remainder to granddaughter's issue, "such issue to take per stirpes and not per capita "— presumption that word "issue" in will means per capita and not per stirpes overcome by evidence of contrary intention of decedent — testatrix died prior to enactment of Decedent Estate Law, § 47-a — first trust fund distributed per stirpes and not per capita — provision in will making it requisite for granddaughter to procure consents to marriage deemed not to include granddaughter's second marriage — accounting sent to referee to hear and report.

The presumption in law, which existed prior to the enactment of section 47-a of the Decedent Estate Law by chapter 379 of the Laws of 1921, that the word "issue" when employed in a will, unexplained by the context, and without terms to qualify it, means issue *per capita* and not issue *per stirpes*, may be overcome by slight evidence of a contrary intention on the part of a testatrix expressed in other clauses in the will, and the court will construe the word "issue" as requiring a *per stirpes* distribution rather than a *per capita* distribution.

Accordingly, the will of a testatrix who died in 1892, which after directing that upon the death of her daughter, a specific trust should be paid to the said daughter's "issue," if any be then living, provided for the creation of a second and larger trust from the residuary estate for the benefit of the said daughter, and upon her death for the benefit of the granddaughter of the testatrix with remainder to the said granddaughter's issue, "such issue to take *per stirpes* and not *per capita*," should be construed so as to effect a *per stirpes* distribution of the specific trust fund rather than a *per capita* distribution, since it is reasonable to assume that the testatrix intended to use the word "issue" with the same force and meaning in connection with the distribution of the specific fund as with the distribution of the fund set out in the residuum clause of the will. Moreover, there is evidence to indicate that the testatrix's dominant thought throughout the will was to effect a *per stirpes* distribution.

A provision in testatrix's will requiring her granddaughter to procure certain consents to her marriage will be deemed to have been sufficiently complied with by procuring consents to the first marriage, for to extend its scope and continue it binding through life is not only to lose sight of the evident purpose of the testatrix but also to transform it into a measure of undue hardship.

An accounting, extending over a period of nine years and concededly intricate, should be sent to a referee to hear and report upon objections of the guardian

*ad litem* of the infant defendant, where no serious objections are interposed by any of the parties and the court has no means of determining the validity of the infant's objections.

ACTION by testamentary trustee for the judicial settlement of its accounts and for the construction of the will.

*Stewart & Shearer* [*W. A. W. Stewart* of counsel], for the plaintiff.

*Larkin, Rathbone & Perry* [*Albert Stickney* of counsel], for the defendant Baes.

*Carlton S. Cooke*, for the defendant Marsh, as executrix.

*James J. Franc*, guardian *ad litem* for the infant defendant Albert Edward Oswald Ormsby.

LEVY, J.:

This is an action by the United States Trust Company of New York for the judicial settlement of its account as trustee under the last will and testament of Ella S. Hoffman, and for the construction of certain clauses of that instrument. The testatrix died on November 7, 1892. By article " fourth " of her will, she created a trust fund of $50,000 which will hereinafter be referred to as the Starkweather fund, with direction to the trustee " to pay over to my mother, Lucinda R. Starkweather, as long as she shall live the net income arising from said Fifty thousand ($50,000) dollars * * * " and " from and after the death of my said mother, the net income arising from said Fifty thousand ($50,000) dollars * * * to be paid to my said daughter as long as she shall live and upon her death I direct that said Fifty thousand ($50,000) dollars be paid *to her issue*, if any shall then be living."

A second trust of the rest, residue and remainder of the estate was created by article " sixth " of the will for the benefit of the said daughter, Ella S. Hoffman, the younger, " as long as she shall live " and upon her death for the benefit of her daughter Olga, " as long as said Olga shall live," the last named being the defendant Olga Baes, and the remainder was devised to Olga's issue, " such issue to take *per stirpes* and not *per capita.*" All of the devisees survived the testatrix. Lucinda R. Starkweather, her mother, died on February 2, 1895. Ella S. Hoffman, the younger, her daughter, died on January 17, 1923, leaving her surviving only one child, the defendant Olga Baes, granddaughter of the testatrix. Olga was married twice; first to one Ormsby and after his death to Jules Baes and she has an only child, the defendant Ormsby,

4

great grandchild of the testatrix. These two are the only living descendants of the latter.

Upon the death of Ella S. Hoffman, the younger, by the terms of the will, the Starkweather fund became distributable and the determination of whether Olga Baes became entitled to the entire fund or Albert Edward Oswald Ormsby takes one-half, furnishes one of the features of the subject-matter of this controversy. The court must thus determine whether there should be a *per stirpes* or a *per capita* distribution of this fund. If the former, Olga falls heir to the entire fund; if the latter occurs, Albert is entitled to receive one-half.

In construing the contested clause of this will the court primarily must look to the intention of the testatrix. This has long been the method and is the controlling and determining factor in every situation of this nature. Rules of construction are applicable and made use of only in so far as they are necessary to properly ascertain the result the testatrix sought to accomplish. If, from an examination of the entire instrument, read in the light of common sense and considered from the point of view of what was within the contemplation of the testatrix, the court can glean the intention, it is not constrained to go farther or to look beyond. Of course, if that intention runs counter to certain well-defined legal principles, it must yield and give way to the latter. Other things being equal, the court will as fully as possible follow out the purpose the testatrix had in mind in drafting the instrument.

The construction and interpretation to be given the word " issue " when used alone, and even when used in connection with other language, have been fruitful of much litigation in this jurisdiction. Many of the reported cases would seem to be irreconcilable and yet, when the context of the given instrument in controversy is considered, they stand for one and the same proposition. In the instant case the defendant Ormsby is unquestionably one of the *issue* of his grandmother. Yet the will unmistakably indicates that it was not the intention of the testatrix that he should receive any part of the Starkweather fund if his mother, the defendant Baes, should be living when the remainder fell in. There is a presumption in law that the word " issue " when employed in a will, unexplained by the context and without terms to qualify it, means issue *per capita*, and not issue *per stirpes;* lineal descendants of unequal degree of consanguinity, grandchildren as well as children. (*Schmidt* v. *Jewett*, 195 N. Y. 486; *Soper* v. *Brown*, 136 id. 244.) Here it is well perhaps to note that this presumption has been done away with by statute (Decedent Estate Law, § 47-a, added by Laws of 1921, chap. 379), but unfortunately this is of no avail

to the court in its present effort to interpret the will, because the very section specifically prescribes that it shall affect *only those dying after it takes effect.*

While the rule of construction just enunciated has long been the prevailing one, however distasteful to the courts, it is equally true that where there is *slight evidence* of a *contrary intention* on the part of the testatrix expressed in other clauses of the will, or where there is present, as the courts have expressed it, nothing more than " a very faint glimpse of a different intention " the court will construe the word " issue " as requiring a *per stirpes* rather than a *per capita* distribution. (*Matter of Durant*, 231 N. Y. 41; *Matter of Farmers' Loan & Trust Co.*, 213 id. 168; *Whitehead* v. *Ginsburg*, 197 App. Div. 266; *Matter of Union Trust Co.*, 170 id. 176; affd., 220 N. Y. 657; *Chwatal* v. *Schreiner*, 148 id. 683; *N. Y. Life Ins. & Trust Co.* v. *Winthrop*, 237 id. 93; *Matter of Lawrence*, 238 id. 116.)

These cases certainly illustrate the tendency of the courts to escape the hard and fast rule which in the past dictated the repeated holding that a gift to " issue " was to be construed as a gift *per capita.* In language peculiarly apropos here and indicative of the judicial desire to follow a course more consonant with sound reasoning and more expressive of the context of an instrument such as this, Judge CARDOZO in *N. Y. Life Ins. & Trust Co.* v. *Winthrop* (*supra*) very tersely yet aptly said (p. 105): " A stubborn rule of law bound the courts for many years to the holding that a gift to ' issue' was to be treated as a gift *per capita.* The rule was often deplored (*Petry* v. *Petry*, 186 App. Div. 738; 227 N. Y. 621; *Matter of Union Trust Co.*, 170 App. Div. 176; 219 N. Y. 537). It yielded to ' a very faint glimpse of a different intention ' (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168, 174; *Matter of Union Trust Co.*, *supra*). It was followed, when there was no escape, in submission to authority. * * * The court is now asked to perpetuate and enlarge what has been felt to be a mischief by holding that there is a like implication of a *per capita* division upon a gift to ' heirs ' or to ' next of kin.' We are not yet committed to the declaration of such a rule."

It would follow, therefore, that the courts endeavor, and rightly so, to defeat this " mischief " by declaring a *per stirpes* distribution upon the slightest evidence evincing such an intent on the part of the testator. So in *Matter of Durant* (*supra*), where the intention was not as clear as in the case at bar, McLAUGHLIN, J., commenting on previous decisions by the Court of Appeals, said (p. 46):

" In the *Farmers' Loan & Trust Co.* case the provision of the will under consideration was: ' I give, devise and bequeath what

would have been his or her share, if living, to his or her issue, if any, such issue to take equally what would have been the parent's share.' The court held that the fair meaning of this provision was that the issue were to take by right of representation, and that the distribution should be made *per stirpes* and not *per capita*.

" In the *Matter of Union Trust Co.* case the provision of the will under consideration was: ' I give, devise and bequeath the share in my said real and personal estate theretofore held in trust for her in equal portions unto her then surviving issue, if any; or, if no such issue shall then survive, I direct that her said share shall be added to the share then held in trust for my other daughter, if she shall then survive; or, if not, then I give, devise and bequeath the same in equal portions to her issue, if any then surviving.' The question there presented for determination was whether a granddaughter whose mother was living was entitled to share in the estate. It was held that she was not; that a *per stirpes* division should be made instead of a *per capita*, as otherwise there would not be the equality of distribution which the testator intended."

I am satisfied that the testatrix intended to accomplish a *per stirpes* and not a *per capita* disposition of the fund, and this is made clearly apparent by article " fifth " of the will, where as we shall see we find considerably more than a " very faint glimpse " of this intention. As was observed, the testatrix created two trust funds: (1) the fund in question; (2) the trust of her residuary estate. The provision of the last cited article which governs the devolution of the residuum says " to such lawful issue of my said daughter Ella as shall be living at the time of the death of said Olga, such issue to take *per stirpes* and not *per capita*." While, concededly, when speaking of the Starkweather fund, the testatrix did not qualify the word " issue," yet in disposing of the larger and much more substantial fund formed by her residuary estate, she expressly limited the significance of the word " issue " by adding " *per stirpes*," thus unequivocally indicating the dominant thought throughout the will. As to the residuum, therefore, there can be no doubt of her intention. The residuary clause carefully provides for every happening which might occur in respect to the continued life of the children of her daughter Ella and upon the death of the latter, for the proper devolution of the residuary estate in the event of each such contingency. Hence it seems reasonable to assume that the testatrix intended to use the word " issue " with the same force and meaning wherever it occurred in her will, and presumed that the word would be construed in the same sense in disposing of the Starkweather trust.

This is further demonstrated by articles " fourth " and " sixth "

of the will which amply show that she had in mind the distinction between the issue of her daughter and that of her granddaughter, in each case linking up the word " issue " with a *per stirpes* qualification. In article " fourth " she directs that upon the death of her said daughter, the Starkweather fund " be paid to her issue if any then be living " whereas in the " sixth " article she provides that in case of a forfeiture " neither the said Olga nor her issue shall take anything under this my will." This unmistakable differentiation by the testatrix with respect to the issue of her daughter and her granddaughter respectively, emphasizes her positive intention that the Starkweather fund should descend to the children of her daughter, and not to the children of her granddaughter in case the latter survived the date of distribution.

It must be remembered that the Starkweather fund was of relatively small account when compared with the other dispositions in the will. The testatrix evidently felt it could serve no useful purpose to repeat the directions which she declared as governing the succession to the residuary estate, and, inasmuch as her daughter Ella had but one child at the date of her will, she seemingly believed that the general provision for inheritance by the issue of such daughter should carry the estate according to the identical scheme of distribution. This undoubtedly was her intention.

A will must be read in its entirety. An interpretation should not be given to words which in one section of the will would mean one thing and in another something diametrically opposite. The will must be kept consistent in terminology and coherent in its plan and structure. " We keep it consistent in its terminology, for otherwise the word ' issue ' means different things in different paragraphs. We keep it coherent in plan and structure, for otherwise there is discrimination, beyond the limits of probable intention, in the treatment of descendants. Either of these considerations might be inadequate if viewed alone. Together they become persuasive. * * * Consistency will, indeed, be sacrificed where intention, as revealed in context or surroundings, will thereby be promoted. The sacrifice will not be made to uphold a rule of distribution which yields to a ' faint glimpse ' of a contrary desire." (CARDOZO, J., in concurring opinion in *Matter of Durant*, 231 N. Y. 41, 48, 50.)

In the case at bar, therefore, applying the rules laid down, we find that it would be manifestly inconsistent to hold that in article " fourth " by using the word " issue " testatrix intended a distribution *per capita*, whereas in article " sixth " she used the same word with a " *per stirpes* " connotation. So, from the viewpoint of coherency, it would be incongruent and illogical to say that she

intended that the defendant Ormsby should during his mother's lifetime receive one-half of the Starkweather fund, when she clearly indicated her intention as to the residuary estate that he should receive no part thereof until his mother's demise. This must be so. The authorities cited fortify the determination of the court and incontrovertibly compel the conclusion reached.

In order to uphold his contention which calls for a *per capita* distribution, defendant Ormsby cited *Petry* v. *Petry* (186 App. Div. 738; affd., 227 N. Y. 621). That case, however, is not authority for his position. There was nothing in the text of the will in that case to qualify the meaning of the word " issue " and the court properly held that the usual presumption should prevail, that is, a *per capita* and not a *per stirpes* distribution. I, therefore, find that the Starkweather fund should be distributed *per stirpes* and not *per capita*, and that Olga Baes is entitled to said entire fund to the exclusion of her infant son, Albert Edward Oswald Ormsby.

Upon the trial a further question arose. Article " sixth " of the will made requisite Olga Baes' procuring certain consents to her marriage. A devise or bequest on condition that the donee may not marry without the consent of a guardian or trustee is not such a general or unreasonable restraint upon marriage as will render the condition void. The precise point involved here, however, may be said to be *vexata questio*, as a careful search for authority in this and sister States has proved. In this country practically nothing has been found in any wise helpful. In England such conditions have been held usually to refer to the first marriage only and that it is sufficient if the devisee has obtained consent thereto. (*Lowe* v. *Manners*, 5 Barn. & Ald. 917; *Randall* v. *Payne*, 1 Bro. C. C. 55; *Crommelin* v. *Crommelin*, 3 Ves. 227; *Hutcheson* v. *Hammond*, 3 Bro. C. C. 128.) While in Chancery in Ireland it was held, true in a situation not completely identical, that the consent to the first marriage did not dispense with the necessity of a consent to the second. (*Alleyne* v. *Alleyne*, 8 Ir. Eq. 493.)

And it occurs to me there is very sound reason for the English ruling. Obviously, the provision making restraint in this direction can have but one purpose, and that lies in the possibility of an ill-considered or untimely marriage. It is born out of a decidedly fixed design to protect one who may not be regarded as adequately mature or otherwise of delicate or youthful age. Indeed in such situations the condition is appropriate and must be held to be valid, but to extend its scope and continue it binding through life is not only to lose sight of the evident purpose of the testatrix, but to transform it into a measure of undue hardship perhaps.

certainly into a whimsical and arbitrary restriction. But here this discussion really becomes academic as a reading of the record and the exhibits offered upon the trial satisfy me that it was amply proved that the defendant concerned, sufficiently substantially complied with the requirements of the will in this respect. As to this, comfort may be gained from the briefs, as all the parties practically concede that this is so.

During the progress of the trial the guardian *ad litem* for one of the parties leveled objections against the accounting. He requested the appointment of a referee to take proofs. Considerable discussion occurred and it was finally suggested that he should not press this but take a proper length of time to thoroughly examine into such accounts which he argued were of nine years' duration. The minutes indicate that this was consented to, and should the guardian persist, a reference would be ordered.

After such examination, he still objects to certain items in the trustee's account, particularly the propriety of an investment made by the executors of the will sometime prior to 1895 of $40,000 Broadway and Seventh Avenue Railroad Company five per cent bonds. The trustee concededly credited itself with a loss of upwards of $22,000 in the sale of the same. This amount the guardian *ad litem* claims should be surcharged against the trustee. The court has no means of determining the validity of this and the other objections and, in view of the intricacy of the accounting, the position of the guardian urging the reference, no serious objection being interposed by any of the parties, it is proper that this accounting should be sent to a referee to hear and report.

Submit findings and interlocutory decree in conformity with this decision.

Judgment accordingly.