## In the Matter of the Will of FRANK H. GOODYEAR, Deceased.

Surrogate's Court, Erie County, January 10, 1947.

*Kenefick, Cooke, Mitchell, Bass & Letchworth* for George G. Sicard and another, as successor trustees, petitioners.

*Allan C. Christman,* special guardian for Josephine B. Keaveny and another, infants.

*Henry Altman,* special guardian for Bart T. Keaveny IV, an infant.

*Delafield, Marsh, Porter & Hope* for City Bank Farmers Trust Company, as executor of Josephine S. Barnard, deceased, and as guardian of the property of Josephine B. Keaveny and another, infants.

VANDERMEULEN, S.   Frank H. Goodyear died on the 13th day of May, 1907, leaving a last will and testament which, among other things, contained the following paragraph described as subparagraph " D " of paragraph numbered " Eleventh ": " D. The remaining one-quarter (¼) part or portion I direct my said trustees to divide into two equal parts or portions, and to hold one such part or portion for the benefit of my granddaughter, JOSEPHINE GOODYEAR SICARD, if she be then living, and to invest and, from time to time, to reinvest the same and to pay over the net income thereof to my said granddaughter, JOSEPHINE GOODYEAR SICARD, semi-annually during her natural life; and upon the death of my said granddaughter, JOSEPHINE GOODYEAR SICARD, I give, devise and bequeath such share or portion so held for her benefit unto her issue, if any; if none, then to my children who may then survive, share and share alike."

At the time of the execution of the instrument, the deceased was fifty-eight years of age, and his wife was fifty-six years of

age. She was given a life use of one half of the residuary estate. Josephine Sicard Barnard (formerly Josephine Goodyear Sicard), life beneficiary of the above trust, died February 4, 1946, leaving two children, Josephine Barnard Keaveny and Bruce Eaton Barnard, infants, surviving her and no children of deceased children. It appears that on June 25, 1946, Josephine Barnard Keaveny gave birth to an infant child named Bart Thomas Keaveny IV. It is the contention of the special guardian for the last-named infant that the distribution should be made per capita and that his ward is entitled to an undivided one third of the remainder of the trust, being issue of the deceased life beneficiary. This contention presents a question which requires a construction of the said paragraph.

A child conceived before the death of the person, upon whose life the remainder was limited, and born thereafter is entitled to share in the fund. (*Matter of Voight,* 178 App. Div. 751, 756; *Hone* v. *Van Schaick,* 3 Barb. Ch. 488, 509.)

In *Palmer* v. *Horn* (84 N. Y. 516, 519) Judge EARL said: " The word ' issue ' is an ambiguous term. It may mean descendants generally or merely children; and whether in a will it shall be held to mean the one or the other, depends upon the intention of the testator as derived from the context or the entire will, or such extrinsic circumstances as may be considered."

The old common-law rule prior to the passage of section 47-a of the Decedent Estate Law applies in this matter, the testator having died before the section became operative (added L. 1921, ch. 379, eff. April 30, 1921).

" A stubborn rule of law bound the courts for many years to the holding that a gift to ' issue ' was to be treated as a gift *per capita*. The rule was often deplored (*Petry* v. *Petry,* 186 App. Div. 738; 227 N. Y. 621; *Matter of Union Trust Co.,* 170 App. Div. 176; 219 N. Y. 537). It yielded to ' a very faint glimpse of a different intention ' (*Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168, 174; *Matter of Union Trust Co., supra*)." (*New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93, 105. See, also, *United States Trust Co.* v. *Baes,* 124 Misc. 48, 51, affd. 216 App. Div. 807, affd. 245 N. Y. 514.)

It was held by this court in *Matter of Burke* (178 Misc. 684) that a gift to issue was a gift to them per stirpes and not per capita and therefore that the child of one of the heirs would not participate in the same.

As bearing on the intention of the testator, consideration of his general testamentary scheme is proper. At the time of his death he had two daughters over the age of twenty-one, and

one son of the age of sixteen, and two children of a deceased daughter of the ages of five and two years, respectively. All of these were the recipients of his bounty under paragraph " Eleventh " of the will. His daughter, Grace Goodyear Depew, was thirty-five years of age at the time of the making of the will and had two children of the ages of twelve and seven respectively. His daughter, Florence, was twenty-three years of age and had two children of the age of four and one respectively.

In the trust of the first half of the residuary estate each daughter's share of the excess of income, in the event of the daughters' not being alive, was to be paid to their respective heirs. Josephine Goodyear Sicard, granddaughter of the testator, was given one eighth of such excess income as was the grandson, George Goodyear Sicard. In the event of the death of either of the said grandchildren, the said income was to be paid to the survivor and in the event of the death of both said grandchildren the income was to be paid over to the living children of the testator.

Upon the death of the wife of the testator, the trustees were directed to divide the real and personal property constituting the trust into four equal parts or portions. Grace Goodyear Depew, Florence Goodyear Wagner and Frank H. Goodyear each were to receive the income of one fourth.

Upon the death of Grace Goodyear Depew and Florence Goodyear Wagner, either before or after testator's wife, their respective shares, upon which income was to be paid to them, was given, devised and bequeathed to their heirs. The share upon which Frank Goodyear was to be paid income during his life was disposed of similarly.

The remaining one fourth is that part of the estate now before the court for construction and will be discussed later in this opinion.

The will provides that the second half of the residuary estate is to be divided immediately on the testator's death as follows: One-sixteenth part was given to a daughter, Grace Goodyear Depew, and in case of her death prior to the decease of the testator, to her heirs. One-sixteenth part was given to the trustees to pay the income of the same to the daughter, Grace Goodyear Depew, during her natural life and at her death the same is given, devised and bequeathed to the heirs of Grace Goodyear Depew.

One-sixteenth part was given to a daughter, Florence Goodyear Wagner, and in case of her death prior to the decease of

the testator, to her heirs. One-sixteenth part was given to the trustees to pay the income of the same to the daughter, Florence Goodyear Wagner, during her natural life and at her death the same is given, devised and bequeathed to the heirs of Florence Goodyear Wagner.

One eighth of the said residuary estate was given in trust to the trustees to pay the income to the guardian or guardians of Josephine Goodyear Sicard and George Goodyear Sicard until they arrive at the age of twenty-one years, the income and accumulated income to be paid to them until they reach the age of twenty-eight years, at which time Josephine Goodyear Sicard and George Goodyear Sicard are each to receive one half of the trust fund held by the trustees. In case of the death of either said Josephine Goodyear Sicard or George Goodyear Sicard, before reaching the age of twenty-eight years, the one half of said trust fund is given, devised and bequeathed to the descendants of the deceased grandchildren, if any; if none, then to the survivor. And in the case of the death of both of said grandchildren prior to arriving at the age of twenty-eight years, leaving no descendants, that part of the trust fund was given to the living children of the testator, share and share alike.

Josephine Goodyear Sicard was two years old at the time of the making of the will. At the age of twenty-eight it would have been impossible for her to have grandchildren, so that if she died before reaching the age of twenty-eight, only a child of hers would have been a descendant. Here the word "children" could have been used and here the word "descendants" could only mean children.

A one-eighth part was given in trust to the trustees to apply the income for the support, education and maintenance of the testator's son, Frank H. Goodyear, until he reached the age of twenty-one years, at which time the trustees were directed to pay over to him the sum of $1,000 and any accumulation of income remaining in their hands, and to pay over the whole of the income of the remainder of such property and estate to Frank H. Goodyear until he arrived at the age of twenty-eight years, at which time he was given, devised and bequeathed all of the remainder. It further provided that in case Frank H. Goodyear died prior to becoming twenty-eight years of age, leaving issue him surviving, then and in that event all of the property in the said estate held for his benefit was given, devised and bequeathed to such issue, and in the event the said Frank H. Goodyear should die prior to the time he became twenty-eight years of age leaving no issue but a widow, one

third is given to the widow and two thirds to his heirs. In case Frank H. Goodyear should die prior to the time he became twenty-eight years of age leaving no issue and no widow, the corpus was given, devised and bequeathed to his heirs at law. In the case of the son, Frank, if he died before reaching the age of twenty-eight, he could not have had grandchildren. Hence by the use of the word " issue " only " children " could be contemplated.

Thus far the disposition has been stirpital.

In the dispositive paragraph now in dispute, the word " issue " has been used somewhat similarly as in the clause dealing with Frank's share. In the light of the testamentary scheme thus far, and considering the age of Josephine when the will was drawn, and the words " if any ", I think it is reasonable to assume that the testator did not contemplate great-great-grandchildren within the realm of the word " issue." Furthermore, the testator's scheme of distribution denotes an equality between children and grandchildren. Surely, he never intended that one child of Josephine should receive less than the other. A per capita construction in this matter means an unequal distribution.

The special guardian for the great-great-grandchild stresses the fact that the skill of the draftsman who drew the will is to be considered — a rule which has often been recognized by the courts. However, it sometimes happens that a lawyer in drawing a will, in order to avoid repetition in language, will use dictionary and grammatical terms without realizing that in so doing he may be paving the road to a construction proceeding. In several places throughout the instrument the testator used different words to express the same ideas. For example, in several places the testator refers to his widow as his wife and his daughter's mother. He uses the words " heirs at law " where " next of kin " would be more apt, particularly when relating to personal property.

The general scheme or dominant purpose will be carried out regardless of inaccuracy of expression. (1 Davids on New York Law of Wills, § 460.)

It was said in *Matter of Durant* (231 N. Y. 41, 46–47): " It is undoubtedly the general rule, as stated in *Matter of Farmers Loan & Trust Co. (supra)*, that unless some other meaning is given to it by the context, the word ' issue ' is not confined to children, but includes descendants in any degree, and that there is a presumption favoring a *per capita* distribution. (*Schmidt* v. *Jewett*, 195 N. Y. 486; *Bisson* v. *West Shore R. R. Co.*, 143

N. Y. 125.) This presumption, however, yields to ' a very faint glimpse of a different intention.' (*Ferrer* v. *Pyne,* 81 N. Y. 281; *Vincent* v. *Newhouse,* 83 N. Y. 505.)

" Here there is sufficient evidence not only to overcome the presumption, but to indicate that the testator intended a per stirpes and not a per capita distribution. Such intention is shown by the frequent use of the words ' to be equally divided between them; ' ' equally to be divided between them; ' or ' in equal shares.' These words, or some of them, are used in the third, eighth, ninth, tenth, fifteenth and sixteenth paragraphs of the will, and also in the codicil. Equality of distribution was the dominant thing in the testator's mind. Thus, he provided for equality among his children in the division of the surplus income; in the *corpus* of his estate not only in the primary gift of one-fifth to each, but in the alternative gift in case the primary gift to any child failed to take effect; in the gift to his grandchildren; and in the direction for distribution of the *corpus* of the trust estate created by the ninth clause of his will for the benefit of the daughter Estelle.

" It is true there was a discrimination in respect to the children of the son Thomas, but this in no way obscures the testator's intent as to the disposition which he desired to make of his estate, which was one of equality.

" This intent would be defeated by a construction which would permit great grandchildren to share in the fund, their parent being still alive. It would produce not equality, but just contrary. It would give Mrs. Dearborn and her two children one share each, or three-sevenths of the estate, while her brothers and sisters would receive four-sevenths, or one share each."

It appears to me that the intention of the testator in the paragraph in question, wherein are found the following words, " and upon the death of my said granddaughter, Josephine Goodyear Sicard, I give, devise and bequeath such share or portion so held for her benefit unto her issue, if any " was that of a " per stirpes " disposition and that such share or portion is payable to the children of Josephine Goodyear Sicard, namely, Josephine Barnard Keaveny and Bruce Eaton Barnard, and that no part of said share is payable to the great-great-grandchild, Bart Thomas Keaveny IV.