Nathan R. Sobel, S.
Incidental to the trustee’s final account, construction is requested of article eotjbth of testator’s will. This particular issue of law recurs with some frequency when the life income beneficiary outlives normal expectancy and survives the remaindermen.
Preliminarily it suffices to note that testator who died in 1901 left all of his estate to nonrelatives. Although married, he had been living apart from his wife and two children, whose whereabouts prior to and since his death have been “ unknown ”. A guardian ad litem represents them in this proceeding.
The main issue is whether a particular remainderman, who predeceased the life income beneficiary or a residuary trust, received under the will a vested remainder interest. Only if he did not, would intestacy result as to such remainder interest and the wife and children take as distributees despite testator’s obvious intention to disinherit them.
*88 The article requiring construction provides:
“ fourth: I give, devise and bequeath the other one-half of all the rest, residue and remainder of my estate and property, real and personal of every nature and kind wheresoever situated to my Executor usr trust to and for the following uses and purposes, that is to say:
“ 1. In case said Julia McAuley and said Agnes La Boyteaux shall both survive me to invest said one-half of said rest, residue and remainder and to pay the income therefrom to said julia mcauley during her life and on her death to pay the income therefrom to said agues la boyteaux during her life and on the death of said Agnes La Boyteaux, or if she shall not survive said Julia McAuley, on the death or the latter to pay the principal of said one-half to the descendants of said Agnes La Boyteaux per stirpes or if she leave no descendants to pay said principal to said Emma W. La Boyteaux or to her descendants, if she be dead, per stirpes and if she leaves no descendants to pay said principal to said Joseph k. la boyteaux and robert c. la boyteaux, the descendants of either of them who may be dead to take the share such deceased one would take if living.”
The primary income beneficiary died in 1909. Agnes La Boyteaux, the secondary income beneficiary, died in 1968 (67 years after testator), the trust then terminating.
The principal was to be distributed under the terms of the will to the remaindermen in the following order:
(1) Descendants of Agnes;
(2) Emma La Boyteaux;
(3) Descendants of Emma;
(4) Jospeh K. La Boyteaux and Robert C. La Boyteaux;
(5) Descendants of Joseph and Robert.
Substitutionary gifts became effective with respect to (1), (2), and (3) above when Agnes (1968) and Emma (1961) both died unmarried and without descendants.
By virtue of such specific substitutionary gifts, the clause of article ‘ ‘ fourth ’ ’ requiring construction in practical effect becomes: [Upon the death of the life income beneficiary] * ‘ to pay said principal to said Joseph K. La Boyteaux and Robert C. La Boyteaux, the descendants of either of them who may be dead to take the share said deceased one would take if living.”
Both Joseph and Robert predeceased the life income beneficiary.
Robert La Boyteaux died in 1960, leaving three children and three grandchildren, a total of six “ descendants ” all living. It is unnecessary to define the nature of Robert’s remainder interest because of the existence of a specific substitutionary *89 provision governing the contingency of his death, prior to the life income beneficiary, leaving descendants. By virtue of such substitutionary provision, the descendants of Robert take the share he would have taken if living. The distribution of such share among these descendants is discussed later in this opinion.
The more difficult problem is with the Joseph La Boyteaux remainder. He died in 1919 unmarried and leaving no descendants. (His father, then living, was .this sole distributee.) The Public Administrator has been appointed administrator d. b. n. of Joseph’s estate and represents his interest in this proceeding.
As noted heretofore, the main issue is whether Joseph took a vested interest in the one half of the remainder. If so, that interest is descendible and the proceeds must be paid to his estate. If not, testator must be held to have died intestate with respect to such interest and that share must be distributed to testator’s distributees, i.e., his wife and children or their respective estates.
The paramount rule, one of substantive law, is that courts must effectuate the intention of the testator. Unhappily, testators (or their draftsman) do not always make their intention clear. A primary fault is the failure to make clear whether a condition of survivorship is intended to be imposed upon the holder of a future interest. A second fault is the failure to provide for ultimate indefeasible vesting in a primary, substitute, or alternate .taker whether a named individual or a class. With respect to the latter, testator here failed to make his intention clear.
It is when such intention is not readily ascertainable that resort may be had to constructional preferences. These are not rules of substantive law but merely rules of construction useful as a guide to the interpretation of ambiguous dispositions. Some are essentially rules for arriving at the normal meaning of language. Some, like the constructional preference for early vesting and the constructional preference against intestacy, (a better term is the natural preference for complete disposition) are presumptions based on what the ordinary testator would probably have intended in the circumstances.
The preference for early vesting, upon which presumption this case must depend, has been criticized (see Rabin, The Law Favors the Vesting of Estates. Why?, 65 Col. L. Rev. 466 [1965]). Such criticism is in some cases sound. The plain fact is that often a testator probably never gave any thought at all to the problem created by the ambiguous disposition — generally a problem which would arise in the distant future. The instant case is as good an example as may be found — one *90 in which a life tenant long outlived natural expectancy. Nevertheless, courts in this State have, in order to determine intention, repeatedly relied on that constructional preference, or its corollary that 1 ‘ conditions ’ ’ are not readily implied and when present are construed narrowly (see Matter of Krooss, 302 N. Y. 424, 427; Matter of Campbell, 307 N. Y. 29, 33). The preference for early vesting results in the passage of property through a dead person’s estate. When, as is most often the case, the property comes to rest in the dead remainderman’s children, issue or descendants, it is fair to conclude that this is what the ordinary testator probably intended anyway. In the instant case however, the Joseph remainder, if held to be vested, will pass through the estate of Joseph’s father, his sole distributee. It thus becomes conjectural whether the ordinary testator or this particular testator would have preferred such a result over any other. The point made is that the constructional preference for early vesting, so frequently indulged in by our courts to determine what a particular testator probably intended, does not inevitably result in a logical and just conclusion. In such cases, criticism is justified.
On the other hand, the constructional preference against intestacy or for complete disposition stands on firmer ground. Presumably one who takes the trouble to make a will does not intend that any of his property shall pass in intestacy. This constructional preference is therefore a sound and useful tool. It is so demonstrated in this case. Testator, here, surely manifested the intention to disinherit his wife and children. To conclude that the Joseph remainder must pass in intestacy to such distributees would be directly contrary to testator’s intention.
If indeed it is testator’s intention which we seek from this ambiguous disposition under construction, and if he were available to express such intention, it is probable that he would prefer (over some other result) that the Joseph remainder be disposed of to Robert’s descendants. But the language used does not só permit (cf. Matter of Craig, 60 Misc 2d 264) and the legislative abolition of the ‘ ‘ no residue of a residue rule ’ ’ was made applicable prospectively and only with respect to residuary beneficiaries who predecease a testator (EPTL 3-3.4).
The guardian ad litem, who has been appointed to represent the interests of testator’s wife and children (or their estates) makes several contentions.
He does not however contend that under the terms of article fourth there is a condition of survival, i.e., a requirement that *91 Joseph survive the life income beneficiary. He concedes in his brief that none exists.
He is justified in not raising such an issue. It is clear that testator imposed no such express requirement. Nor may a condition of survival be implied. In all of the cases involving future interests created in named individuals (as distinguished from gifts in class-form importing survival) there is a strong presumption against conditions of survival. The reasoning is that testator, in selecting a named individual to be the beneficiary of a disposition (and making no substitute or alternate gift), has no objection to that individual deciding who will take the disposition in his place should he die before possession. For this is what would happen if that named individual had survived to receive actual possession as the testator assumed he would. In practical effect this is the same presumption which justifies the preference for early vesting and also the anti-lapse statutes (EPTL 3-3.3). (It is noted parenthetically that the Robert remainder was disposed of in class-gift form to Robert’s “ descendants ”. If any of such descendants had predeceased the life tenant — none did!- — it is at least arguable that the use of the term “ descendants ” imports an implied condition of survival which could prevent such a descendant’s estate from taking.)
It is concluded that under applicable principles of testamentary construction, while the time of enjoyment of Joseph’s remainder interest was postponed, there was here no express or implied requirement of survival. Joseph was not required io survive the life income beneficiary (2 Powell, Real Property, par. 334; Restatement, Property, § 261 [1940]; cf. Matter of Larkin, 9 N Y 2d 88; Matter of Gautier, 3 N Y 2d 502).
The guardian ad litem makes two alternative contentions.
(1) He urges that testator’s intention is so manifest that this court is justified in disregarding the constructional preference for early vesting as a guide in determining probable intent.
He argues that testator desired to benefit only his friends the La Boyteaux sisters and brothers (Agnes, Emma, Joseph and Robert) and their descendants. To accomplish this purpose, he created five remainders (and four substitutionary directions). He expected that at least one of these would become effective. With respect to the Joseph remainder he specifically provided that it should be enjoyed as a last resort by Joseph’s descendants. But beyond this, he neither expressed any intention nor had any intention. This purpose is so manifest, argues the guardian ad litem, that when none of the con *92 tingencies provided by the testator came to pass, the law of intestate succession must be held to take over despite testator’s conceded purpose to disinherit his own next of kin.
This is a doctrine of exhaustion of contingencies directly opposed to the constructional preference for early vesting.
A rule of construction is simply that and may, of course, be disregarded by a court except as decisions of higher courts in similar fact situations command otherwise. A constructional preference as a tool to determine a testator’s intent will be completely disregarded when it tends to defeat such intent. It should also be disregarded when the consequences of its application interfere with the probable and natural objectives of the testator.
None of these factors are present here and as will be noted (discussed infra) high courts have commanded in precisely similar fact situations the application of the constructional preference for early vesting. To disregard that presumption would be to defeat the one purpose which testator did manifest — to disinherit his own next of kin. To utilize the presumption would result in effectuating to a partial extent the probable and natural objectives of the testator. The Joseph remainder will pass to his father’s estate. The affidavits establish that the father, Anthony, died testate disposing of his estate — one half to his wife (a stepmother of the La Boyteaux children) and the other half to his then surviving children, Robert, Emma and Agnes. With respect to the estates of the latter, this is a probably desired objective. The alternative distribution to testator’s own next of kin is manifestly an intent-defeating result.
(2) The second contention of the guardian ad litem, in view of all that has been said, need be discussed briefly. He bontends that under the definition of vested and contingent remainders in section 40 of Real Property Law (in effect at testator’s death) Joseph’s remainder was contingent rather than vested. That section, applicable to personal property as well (Personal Property Law, § 11), has been severely criticized. It was so brief and so exceedingly general so far as descendibility of future estates was concerned as to be of little use to courts confronted with these questions (2 Davids, New York Law of Wills, § 953). It was, in consequence, repealed in 1965 (ch. 204), and, on joint recommendation of the Law Revision Commission (N. Y. Legis. Doc., 1965, No. 65 [F]) and the Commission on Estates (FourthReport; N. Y. Legis. Doc., 1965, No. 19), better but by no means comprehensive definitions were substituted. The basic defects in old section 40 and Moore v. Littel (41 N. Y. 66) (cited by the guardian ad litem) are discussed in the Prac *93 tice Commentaries to the new definitions substituted (EPTL 6-4.7 to 6 — 4.10).
Definitions, old or new, as this case illustrates, should be avoided where possible. Either of the two remainders in issue (Joseph’s and Robert’s) could fit into at least two of the newer definitions of remainder interests and with slight modification of circumstances a third and fourth.
The determining factor in this construction issue is that over the years, the courts have uniformly held that language such as used by the testator here, or language substantially identical, creates a vested remainder in fee subject to be divested by the remainderman’s failing to survive the life beneficiary, if, but only if, such remainderman leaves descendants or issue surviving.
Joseph K. La Boyteaux received in 1901 upon the death of testator a vested remainder interest. Testator provided, however, supplanting limitations. Joseph was to become the substitute taker if Agnes and Emma both died without descendants. This happened. Joseph’s interest was to be supplanted if, but only if, he died leaving descendants. Having died without descendants his interest was not supplanted. His interest remained vested in fee and was descendible to his designated heirs or next of kin.
It is thus the constructional preference for early vesting heretofore discussed at length which requires that the supplanting limitations or conditions be strictly construed to the exact circumstances stipulated by testator. Brother Robert died leaving descendants. His remainder interest was supplanted. Brother Joseph died without leaving descendants. His vested interest was not supplanted. His was a gift which only one uncertain event could defeat, that of his death leaving descendants.
A long series of New York cases construing substantially identical provisions so hold (Matter of Krooss, 302 N. Y. 424, supra; Matter of Campbell, 307 N. Y. 29, supra; Matter of Bolton, 282 N. Y. 728; Stringer v. Young, 191 N. Y. 157; Byrnes v. Stilwell, 103 N. Y. 453; Hennessy v. Patterson, 85 N. Y. 91; Matter of Elting, 268 App. Div. 74, affd. without opn. 294 N. Y. 941; Matter of Haggerty, 128 App. Div. 479, affd. without opn. 194 N. Y. 550).
Excellent discussions of the principles involved are found in lower court cases (see Matter of Cohen, 1 Misc 2d 463; Matter of Wilkinson, 114 N. Y. S. 2d 423).
Landmark cases in other States have expressed the same viewpoint (Matter of Houston, 414 Pa. 579; Baldwin v. Colglazier, *94 173 Neb. 775; Knight v. Pottgieser, 176 Ill. 368; Matter of Stanford, 49 Cal. 2d 120).
The trustee is directed to distribute the Joseph remainder to his estate.
The remaining issue for construction is the distribution of the Robert remainder among his “ descendants ”. His descendants are a son Robert (no children), a son David, adjudicated incompetent (no children), and a daughter Jean (three children). All six are living.
Testator made no express provision to indicate whether distribution to “ descendants ” should be per stirpes or per capita. If held to be the latter, Jean’s branch of the family would receive four-sixths of the remainder — an unjust result.
EPTL 2-1.2 (formerly Decedent Estate Law, § 47-a) provides that whenever a disposition is made to “ issue ” (the same rule applies to 11 descendants ”; see Matter of Palmer, 38 Misc 2d 553) “ such issue, if in equal degree of consanguinity to their common ancestor, take per capita, but if in unequal degree, per stirpes, unless a contrary intention is expressed.” When originally enacted in 1921 this statutory provision was designed to overcome the prior decisional or common-law rule to the effect that a disposition to issue was presumed to import a per capita disposition, although this presumption yielded to “ a very faint glimpse of a different intention ’ ’ reflected in the disposing instrument (see Matter of Farmers’ Loan & Trust Co., 213 N. Y. 168).
This will is governed not by the newer statute but by the prior decisional rule (Matter of Park, 158 Misc. 866). To find a per stirpes distribution there must be found a contrary intention in the instrument.
This court finds such a contrary intention and directs distribution of the Robert remainder per stirpes to his three children to the exclusion of the grandchildren.
1. Throughout the other provisions of the will and more particularly in article fourth (with respect to the “ descendants ’ ’ of Agnes and Emma) a per stirpital direction is made. It is fair to infer that testator intended no difference in the direction for distribution to the descendants of Robert. (Central Hanover Bank & Trust Co. v. Pell, 268 N. Y. 354; Matter of Durant, 231 N. Y. 41; United States Trust Co. v. Baes, 124 Misc. 48, affd. 216 App. Div. 807, affd. 245 N. Y. 514; Matter of Ward, 20 Misc 2d 608; Matter of Ripley, 27 Misc 2d 782; Matter of McKim, 21 Misc 2d 996.)
2. Where the direction for distribution, is to “ issue ’ ’ or “ descendants ” in substitution for a disposition to a common *95 ancestor (viz: “ the descendants — to take the share such deceased one would take if living”), such substitutionary direction imports per stirpital distribution (2 Davids, New York Law of Wills, § 673). This is a “ fairness ” rule.
3. A contrary intention may also be “ glimpsed” from this otherwise carefully drawn will, from the failure of the testator to use the specific direction “ per capita ” or similar terms “ in equal parts ” or “ share and share alike ” (cf. Estate of Place, N. Y. L. J., June 18, 1969, p. 18, col. 6).
For all these reasons, there is in this will more than “ a glimpse of a different intention” to which the decisional or common-law rule of per capita distribution must yield.