UNITED STATES TRUST COMPANY OF NEW YORK, as Trustee under the Last Will and Testament of EMILY GRACE NATHAN, Deceased, for the Benefit of HARMON H. NATHAN, Plaintiff, *v.* H. HENDRICKS NATHAN and Others, Defendants.

Supreme Court, New York Special Term, April 10, 1925.

**Wills — construction — eight separate trusts were established by will for benefit of children of testatrix — will provided further for payment of principal on death of any child of testatrix to his or her lawful issue — beneficiary died after death of testatrix leaving children and grandchildren — intention of testatrix was that on death of beneficiary principal fund should be divided among children of beneficiary equally — grandchildren take no share.**

The principal of a trust fund established by a will should be divided equally among the children of the beneficiary who died after the testatrix and not *per capita* among said children of the beneficiary and his grandchildren, where it appears that the testatrix provided for the division of her estate into as many equal parts as she had children and the establishment of separate trusts for the benefit of surviving children and the children of any deceased son or daughter, and further provided that upon the death of any beneficiary the principal of the trust fund should be paid over to his or her lawful issue, and that other provisions of the will indicate the intent that the testatrix desired to have the property divided equally *per stirpes* and not *per capita.*

ACTION by trustee involving construction of will.

*Stewart & Shearer*, for the plaintiff.

*H. S. Hendricks*, for the defendants H. Hendricks Nathan and another.

*Cardozo & Nathan,* for the defendants, executors, etc.

*Edward S. Kaufman,* for the defendant Amy Kaufman.

*Alexander B. Halliday,* for the defendant Gerald L. Kaufman.

*Francis X. Kelly,* guardian *ad litem,* for the infant defendants, Alan Hart Nathan and another.

GLENNON, J.:

Plaintiff, trustee, in this action, has asked for instructions as to whom it shall pay the moneys and property in a certain trust fund created by the will of one Emily Nathan, deceased. The will was executed in 1875 and was admitted to probate in 1879. None of the sons or daughters of the testatrix, who were living at the time of the execution of the will, predeceased her. She left surviving eight children.

In the 12th paragraph of her will the testatrix directed that after her death the estate should be divided " into as many equal parts or shares as I may have living sons and daughters me surviving at the time of my death, and deceased sons and daughters leaving lawful issue me surviving at the time of my death; my then living sons and daughters to be each represented by one share, and the child or children of each deceased son or daughter of mine to be represented by one share." Eight separate trusts were thus established. The one concerning which a controversy has arisen is the fund set apart, pursuant to the provisions of the will, for Harmon Nathan, a son, who died in 1924.

Harmon Nathan left surviving him three children, the defendants, H. Hendricks Nathan, Rosalie Nathan and Amy Kaufman, and three grandchildren, the defendants Alan Hart Nathan, Constance Nathan and Gerald L. Kaufman. H. Hendricks Nathan is the father of Alan and Constance Nathan, and Amy Kaufman is the mother of Gerald L. Kaufman. The defendant Rosalie Nathan is unmarried. The question to be determined is whether the testatrix intended to distribute the fund held by the plaintiff *per stirpes* or *per capita.* If it is to be divided *per stirpes,* each of the children of Harmon Nathan will be entitled to receive one-third. If it is to be disposed of *per capita,* each of the children and each of the grandchildren will take a one-sixth share.

The meaning of the following sentence which appears in the 12th paragraph is the subject of dispute: " and upon the death of any child of mine except my daughter Rosalie, upon the further trust, that said Trust Company, pay and convey the principal of the share of the child so dying with any unapplied income thereof to his or her lawful issue, if any, or if there be none, then unto and among the next of kin of such child so dying, according to the

present statutes of distributions of the estates of intestates in the State of New York, absolutely."

The guardian *ad litem* of the infant defendants asserts that this provision of the will indicates that it was the intention of the testatrix to distribute the Harmon Nathan fund *per capita*. Great emphasis is laid by him upon the fact that the testatrix used the expression " lawful issue " in disposing of this particular gift. My attention has been directed to the case of *Petry* v. *Petry* (186 App. Div. 738). In that case Mr. Justice PAGE quoted from the the opinion in *Soper* v. *Brown* (136 N. Y. 244, 250) as follows: " It is settled that under a gift to ' issue,' where the word is used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares *per capita* and not *per stirpes*, as primary objects of the disposition." In *Schmidt* v. *Jewett* (195 N. Y. 486, 490) the court said: " It is well settled in this state that the words ' legal issue,' when used in a will and unexplained by the context, have the meaning of descendants." While the presumption in this State favors a *per capita* distribution, still it yields to " a very faint glimpse of a different intention." (*Matter of Farmers Loan & Trust Co.*, 213 N. Y. 168.)

An examination of the will leads me to the conclusion that a stirpital distribution was intended. Equality was the aim of the testatrix. It is apparent that in using the expression " lawful issue," the testatrix did not intend to include the issue of the living children of Harmon Nathan. We find the first " faint glimpse " of a different intention in the sentence used by the testatrix to establish the various funds. There she directs the trustee to set up separate and distinct shares for her sons and daughters, surviving at the time of her death, and deceased sons and daughters, leaving " lawful issue me surviving at the time of my death," and " my then surviving sons and daughters to be each represented by one share and the child or children of each deceased son or daughter of mine to be represented by one share." It is clear, therefore, that equality of distribution was the dominant thought of the testatrix. That it was uppermost in the mind of the testatrix is evidenced by her direction " to invest and keep invested each share separately for the child of mine then living, or the children of any deceased child of mine for whom the same was set apart." Had Harmon Nathan predeceased the testatrix, the share set apart for him subsequently would have been paid over to his children, the defendants H. Hendricks Nathan, Amy Nathan and Rosalie Nathan, upon the arrival of the youngest at the age of twenty-one.

In order to throw further light on the intention of the testatrix, it is well to read in this connection the last sentence of the 12th paragraph of the will, wherein she directs " as to the share  *  *  * set apart for any child, or children, of any deceased child of mine, to apply the net income  *  *  *  to the use of the child, or children, of the deceased child of mine  *  *  *  during the minority of such child, or children  *  *  *  upon the arrival at the age of twenty-one years of such child or of the youngest child, if there be more than one,  *  *  *  to pay over the principal of the share set apart for such child or children unto such child or children then living, or if there be none then unto and among my children then living and the issue of any then dead, equally, share and share alike, each child of mine then living to take an equal share thereof, and the child or children of any deceased child of mine, to take the share to which the parent would have been entitled if living." It will be noted that the testatrix used the word " issue " as a synonym for children. In addition thereto the sentence in question further indicates that equality of distribution was aimed at.

It seems quite evident to me that the testatrix applied the same meaning to the term " lawful issue " in the sentence in her will, as to which the meaning is questioned, that she did in the first and last sentence of the 12th paragraph. At the time the will was probated, some of the sons and daughters were married, others were not. Her daughter Rosalie was married and had children. In reference to the fund set apart for her daughter Rosalie, the testatrix directed: " should my said daughter Rosalie die leaving lawful issue " the income was to be paid " unto and among the children of my said daughter Rosalie, equally, share and share alike, until the youngest child of my said daughter Rosalie shall attain twenty-one years of age or die. And upon said youngest child of  *  *  *  Rosalie attaining such age or dying, whichever event shall first happen  *  *  *  to pay the principal  *  *  *  unto and among the then surviving children of my said daughter Rosalie, equally, share and share alike; or if there be but one the whole to go to that one; or if there be none then unto and among the next of kin of my said daughter Rosalie according to the present statutes of distribution of estates of intestates in the State of New York." Here again we find that equality of distribution was the clear intent of the testatrix. As was said in *Matter of Durant* (231 N. Y. 41, 47): " This intent would be defeated by a construction which would permit great grandchildren to share in the fund, their parent being still alive. It would produce not equality, but just the contrary."

Supreme Court, April, 1925.                    [Vol. 124

It is apparent that the testatrix did not intend that her trustee should make a *per capita* distribution of the fund in its possession. Evidence of a contrary intention is supplied by a consideration of the entire scheme of distribution.

For the reasons set forth herein the plaintiff will be directed to divide the Harmon Nathan fund equally between H. Hendricks Nathan, Amy Kaufman and Rosalie Nathan.