JOHN JOSEPH PETRY and OLIVER P. BYRNE, as Surviving
Executors and Trustees under the Last Will and Testament
of CHARLES F. PETRY, Deceased, Respondents, *v.* CATHRYN
PETRY and Others, Appellants, Impleaded with HENRIETTA
LANGAN and Others, Respondents.

First Department, March 7, 1919.

**Will — when children and grandchildren take under gift to " issue "
— origin and reason for established rule as to construction of
word " issue."**

Where a testator devised a portion of his estate, held in trust for the benefit
of his wife during her life, to his brother, provided he survived the wife and
in the event of his death prior to the decease of the wife devised said portion
of the trust " unto the issue " of said brother, and further devised another
portion of said trust estate " unto the issue " of a deceased brother, and in
a prior clause of the will devised property held in trust to " the children "
of another brother, and there was nothing in the context of the will indi-
cating an intention to give to the word " issue " any other meaning than
that fixed by the decisions of the courts of this State, it must be held that
the testator intended to give to the children and grandchildren of the
deceased brother living at the time of said testator's death said portion
of the remainder *per capita.*

Under a gift to issue where the word is used without any terms in the context
of the will to qualify its meaning, the children of the ancestor and the
issue of such children, although the parent is living, as well as the issue
of deceased children, take in equal shares *per capita* and not *per stirpes*
as primary objects of the disposition.

Origin and reason for the above construction of the word " issue " discussed.

APPEAL by the defendants, Cathryn Petry and others,
from a judgment or decree of the Supreme Court in favor
of the respondents, entered in the office of the clerk of the
county of New York on the 11th day of April, 1918, upon
the decision of the court after a trial at the New York Special
Term, and also from an order entered in said clerk's office on
the 24th day of June, 1918, denying appellants' motion for
a new trial for the purpose of offering additional evidence.

*George W. Field* of counsel [*Platt & Field,* attorneys], for
the appellants.

*Robert D. Geswein,* for the plaintiffs, respondents.

*Benjamin F. Kraft,* for the respondent Ray Langan.

*John A. Hardiman,* for the respondents Pearl Langan and others.

PAGE, J.:

The testator died on January 6, 1910. The provisions of the will of which a construction is sought are the following: The testator devised and bequeathed two-thirds of his residuary estate to his executors in trust to pay to his wife all the net income thereof during her life, and upon her death to be divided as follows:

" 1. A one undivided one-half part of said portion of my estate so held in trust, I give, devise and bequeath unto my brother John Joseph Petry, provided he survives my wife, * * * and in the event of the death of said John Joseph Petry prior to the decease of my wife, then I give, devise and bequeath said one undivided one-half part of said portion of my estate so held in trust, unto the issue of my brother John Joseph Petry, absolutely and forever.

" 2. A one undivided one-half part of said portion of my estate so held in trust, I give, devise and bequeath unto the issue of my deceased brother John Petry absolutely and forever."

John Joseph Petry survived the life beneficiary and he, therefore, took one-half of the trust estate. Eight children and nine grandchildren of John Petry were living at the time of the testator's death and one grandchild was born after the death of the testator but before the death of the life beneficiary. The two constructions which are respectively urged upon the court are, *first,* that by the use of the word " issue " the testator intended to give that portion of the remainder to the children of his deceased brother John, whereby each would receive one-eighth thereof; *second,* that by the use of the word " issue " the testator intended to give that portion of the remainder to the children and grandchildren *per capita,* whereby each would receive one-eighteenth thereof.

The learned justice at Special Term decided in accordance with the latter rule and his decision is supported by many authorities in this State. After citing many English cases, Judge ANDREWS, writing for a unanimous court, said: " It is

settled that under a gift to 'issue' where the word is used without any terms in the context to qualify its meaning, the children of the ancestor and the issue of such children, although the parent is living, as well as the issue of deceased children, take in equal shares *per capita* and not *per stirpes*, as primary objects of the disposition." (*Soper* v. *Brown*, 136 N. Y. 244, 250.)

This was in terms reaffirmed in the case of *Schmidt* v. *Jewett* (195 N. Y. 486, 491). And it is pointed out that where any other construction has been given to the word "issue" and it has been held to mean "children" or given a stirpital signification, there has been something in the context of the will that showed the latter meaning was necessary to carry into effect the intention of the testator.

In a very recent case on this subject Judge CARDOZO, writing for the Court of Appeals, said in *Matter of Farmers' Loan & Trust Co.* (213 N. Y. 168, 173): "The presumption in this State favors a *per capita* distribution (*Schmidt* v. *Jewett, supra; Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125), but the presumption yields to 'a very faint glimpse of a different intention' (*Ferrer* v. *Pyne*, 81 N. Y. 281, 284; *Vincent* v. *Newhouse*, 83 N. Y. 505, 513; *Bisson* v. *West Shore R. R. Co., supra*)."

In my opinion there is nothing in the context of this will upon which we can predicate an intention to give to the word "issue" any other meaning than that it is said to have fixed upon it by the decisions of the courts. In disposing of the other half of this particular trust estate, the testator provided that upon the death of the life beneficiary it should go to his brother John Joseph, if he should survive such beneficiary, but if he should predecease her, then it was devised and bequeathed "unto the issue of my brother John Joseph Petry, absolutely and forever," using the identical language that he used in the devise and bequest to the issue of his deceased brother John.

In a prior clause of the will the testator established another trust in one-third of his residuary estate, making his wife the life beneficiary, and after her death making his brother Frank A. Petry the life beneficiary of the trust, and on his death the will provides that "the said trust is to cease and

terminate, and the said portion of my estate so held in trust, I give, devise and bequeath to Francis J. W. Petry, David Petry and Mary Elizabeth W. Petry, the children of my said brother Frank A. Petry, to them absolutely and forever." Therefore, it would appear that when the testator intended the remainder to go to the children of a brother he said so in terms. We, therefore, can discover nothing in the context of the will which would show any special meaning was to be given to the word " issue " as used in the clause under consideration, other than that the cases above cited say the law implies. This would lead to an affirmance of the judgment. In my opinion such a construction does violence to the intention of the testator. In the one-third portion of the residuary that was given to the family of his brother Frank, the children took a vested remainder. Their children, if the parent was living, would take nothing under this will; and if the parent was dead at the time of Frank's decease, the children of the deceased parent would take the share that would have gone to their parent, there being no words of survivorship. Also the one-third portion of the residuary given to his brother John Joseph passed to him and his children took no interest, except through him, in case he died·intestate, and then if he left him surviving living children and grandchildren who were children of deceased children the distribution would be *per stirpes* and not *per capita*. (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], §§ 83, 98, subds. 1, 4.) No reason appears nor is suggested why he should have intended that the children of his deceased brother John should have their shares determined by the quotient obtained by the number of all the children and grandchildren being used as the divisor. By this construction Henrietta Langan and her five children receive one-third of this portion of the estate; John A. Petry and his two children receive one-sixth; Lillian Davidson and her two children receive one-sixth; Caroline Geiss and her child one-ninth, while Cathryn Petry, Elizabeth Wolf, Arthur Petry and Isabelle Mannion each receive one-eighteenth.

It is generally admitted by judges who have.felt compelled to enforce this rule of construction that by so doing they have done violence to the real intention of the testator.

Lord LOUGHBOROUGH in *Freeman* v. *Parsley* (3 Ves. Jr. 421, 422 [1797]) said: " In the common use of language, as well as the application of the word ' issue ' in wills and settlements it means all indefinitely. I very strongly suspect, that in applying that to this will I am not acting according to the intention; but I do not know, what enables me to control it. If a medium could be found between a total exclusion of the grandchildren, and the admission of them to share with the parents, the nearest objects of the testator, that would be nearer the intention." Lord THURLOW in *Knight* v. *Ellis* (2 Bro. Ch. 570, 578 [1789]) said: " It must have occurred to the judges who have decided those cases, that, under the idea of making rules of decision as to leasehold estates analogous to those which are applied to estates of inheritance, the intention of the testator must be much oftener disappointed than carried into effect, and, then, there is no wonder that the court should try to get out of the technical rule by any means it can." Without multiplying citations from the English cases, we will refer to the latest case, which demonstrates that lapse of time and repeated declarations of the rule have not reconciled the courts of that country to the rule. In *Matter of Hickey* (L. R. [1917] 1 Ch. Div. 601) the court said: " It has been said and I think truly, that the word ' descendants ' is less easy to control than the meaning of the word ' issue.' Laymen (in this respect more accurate, I think, in their use of language than lawyers) mean by the word ' issue ' children; but lawyers give it a technical and wider meaning, and include in it descendants of all degrees. It is not difficult to suppose that in using the word ' issue ' a testator may have intended the natural and not the technical meaning of the word."

In *Soper* v. *Brown* (*supra*) Judge ANDREWS, after enunciating the rule above quoted, said: " It might well be doubted whether a testator actually contemplated that the children of a living parent would take an equal interest with the parent under the word ' issue ' or that the issue of a deceased child should not take by representation the share of its parent."

In *Matter of Farmers' Loan & Trust Co.* (*supra*) the court said, citing authorities: " The presumption yields to ' a very

faint glimpse of a different intention,' " and again (at p. 175): " A rule which yields so readily as the one that presumes a *per capita* division, must give way where adherence to it involves a discrimination so unreasonable."

In *Matter of Union Trust Co.* (170 App. Div. 176; order modified, 219 N. Y. 537, to extend to all of the class with the appellant, and, as modified, affirmed, 220 N. Y. 657) this court, in modifying a decree of the Surrogate's Court which had applied the rule that a distribution was to be made *per capita,* among the children and grandchildren of the deceased, in an opinion by Presiding Justice INGRAHAM said: " As before stated, the controlling intention all through this will is equality. And this equality is not taking all the descendants of the daughter as a class, no matter what their degree of relationship should be to the testator, but equality among the children of his daughter, leaving their descendants to take the share of the parent dying before the death of the life beneficiary. It certainly would not be equality to give seven shares to one granddaughter having six children and one share to a granddaughter having no children, and such a construction would seem to defeat what is to me the controlling intention as expressed in this will. It may be that in this construction of the will an intention to confine this distribution *per stirpes* rather than *per capita* has gone beyond any reported case, but after examination of a great many wills I am clearly of the opinion that to give to the word ' issue ' a construction that would include all descendants, whether their parents were living or not, has resulted in a distribution of estates which has really been contrary to the testator's intention and which has really worked great injustice among a testator's descendants; and so I think, in construing such a will, that equality means, not equality of all descendants, but equality in the branches into which the person's family are naturally divided."

Because of the feeling that the rule that issue means all descendants, and that where used in a gift by will or deed they all take *per capita,* grandchildren taking equally with their living parents, does not effectuate the intention of the testator, the courts of this State have seized upon very slight *indicia* of a stirpital meaning and held the rule did not apply,

giving effect to a very faint glimpse of such intention. (*Ferrer* v. *Pyne,* 81 N. Y. 281, 284; *Vincent* v. *Newhouse,* 83 id. 505, 513; *Palmer* v. *Horn,* 84 id. 516, 519; *Drake* v. *Drake,* 134 id. 220; *Chwatal* v. *Schreiner,* 148 id. 683; *New York Life Ins. & Trust Co.* v. *Viele,* 161 id. 11, 19; *Matter of Farmers' Loan & Trust Co., supra; Matter of Union Trust Co., supra.*) In fact the exceptions to the rule seem to have a more general application than the rule. Feeling that such a result argued a fallacious rule, I have carefully read many English cases to discover the origin and reason for the rule as declared by their courts. While I have not found these reasons distinctly set forth in any opinion, I am of opinion that those reasons may be found to proceed from two sources, and when I have applied these tests to the various cases, they seem to afford a substantial basis for the decision.

*First.* The word " issue " when used in a conveyance or devise of real estate was synonymous with " heirs of the body " and created an estate in tail. In order to render the entail effective it was necessary that it should comprehend all the descendants in the line to the remotest degree. The estate, however, did not devolve on all simultaneously but successively. While it was held that " issue " *prima facie* was equivalent to " heirs of the body " it was more easily restricted by the context, and the use of words of distribution, as for instance the adding of the words " share and share alike," would show an intention not to entail the estate, as a distribution would destroy the entail. Therefore, the rule was stated to be that the word " issue " unless controlled by the context embraced descendants of every degree whensoever existent. (See 2 Jarman Wills [6th Eng. ed.], 1590.) If the word " issue " was given the limited meaning of children then the children would take an absolute fee, and the estate would not be entailed. So far as its application to deeds of real estate or devises is concerned the comprehensive meaning which would establish an entail was favored.

*Second.* A bequest to the issue of a man was a bequest to a class. All those persons living at the time of the taking effect of the bequest who were within the designated class took equally. If the word " issue " were given the limited meaning of children, then all the children living at that time

would take *per capita*. Children of deceased children not
being in the class would take nothing. If, however, the
word " issue " was given the meaning of descendants of every
degree, then all that were within the designation of the class
would share equally. As the right did not come through
the parent, but because the grandchild was an original object
of the bequest because of its being one of the class designated,
the grandchildren or great-grandchildren would take *per
capita* and without regard to stock. This explains the difficulty
which confronted Lord LOUGHBOROUGH in *Freeman* v. *Parsley*
(*supra*) of which Judge HOLMES makes light in *Dexter* v.
*Inches* (147 Mass. 324, 325), stating that the " finding a
medium between total exclusion of grandchildren and the
admission of them to share with their parents does not strike
us as insuperable. * * * Nor do we think that a difficulty
in stating a conclusion justifies a construction which the
language used, as well as the probabilities, show to be con-
trary to what the testator could have meant." There was
no such difficulty under the laws of Massachusetts nor is there
any such difficulty under the laws of New York. But there
was an insurmountable difficulty under the laws of England
as they then existed.

In the opinion in *Freeman* v. *Parsley* (*supra*) Lord LOUGH-
BOROUGH said: " When you put the question, whether he meant
all these grandchildren should take with their parents, I think,
he would say, he did not; yet if he was asked the other way, if
it should go to the survivor, while there was a descendant, I am
equally clear, he would not have given it to the survivor."
This was the alternative, and he gave that construction which
would allow the grandchildren, being children of a deceased
child, to take rather than that which would disinherit them.

These two rules, one of which has reference to the word
" issue " in a devise where it would create an estate in tail
and where the same word when used in a bequest would
confer absolute ownership in all living descendants, explains
the comment of Lord THURLOW in *Knight* v. *Ellis*, above
cited, for he said in the case of real estate A would take for
the purpose of transmitting the property through him to his
issue, and he was, therefore, considered as taking an estate
tail which would descend to his issue. An estate in chattels

is not transmissible to his issue in the same manner as real estate, nor capable of any kind of descent, and, therefore, an estate in chattels so given, from the necessity of the thing, gives the whole interest to the first taker.

Our courts have adopted these rules for the construction of instruments of gift where the word " issue " is used, although the reason that caused the English courts to adopt them does not obtain in the laws of this State. Estates tail were favored by the English law. They were abolished in this State. Under our Statute of Descent and Distribution, if there are lineal descendants of equal degree of consanguinity to the intestate the real estate descends to them in equal parts; that is, *per capita.* If any of the descendants be living and any be dead, leaving issue living, so that there are lineal descendants in unequal degrees, " each living descendant shall inherit such share as would have descended to him had all the descendants in the same degree of consanguinity who shall have died leaving issue been living; and so that issue of the descendants who shall have died shall respectively take the shares which their ancestors would have received; " that is, *per stirpes.* (Decedent Estate Law, §§ 82, 83.) While in the distribution of personal estate, the same rules apply to the distribution among lineal descendants. . (Id. § 98, subds. 1, 4.)

The children of an ancestor and the grandchildren, being children of a deceased child, do take under our law. The Statutes of Descent and Distribution both recognize the right of descendants of unequal degrees to take *per stirpes.* It is not necessary to allow the living children of living parents to take in order that living children of deceased parents may not be disinherited. Therefore, the reason for the rule having ceased, or rather not having existed in this State since 1782, when our first Statute of Descent (Laws of 1782, chap. 2; Laws of 1786, chap. 12) and our first Statute of Distribution (Laws of 1774, chap. 11; 5 Colonial Laws of N. Y. [Comp. Stat. Rev. Comm.] 614, chap. 1649; Const. 1777, art. 35; Laws of 1787, chap. 38) were enacted and in force, the rule should be abrogated. " The law favors that construction of a will which will make a distribution as nearly conformed to the general rule of inheritance as the language will permit." (*Rivenett* v. *Bourquin,* 53 Mich.

10, 14.) In my opinion such a construction is just and more likely to conform to the intention of the testator unless there is some expression in the will that would show a contrary intent. The Statutes of Descent and Distribution were drawn with the experience of generations as a guide, and represent the fairest and most equitable distribution of the property of a decedent that those skilled in the law have been able to devise. Those who drafted our statutes had a deep knowledge of the English statutes and decisions of courts bearing upon the subject. The statutes that they drew were intended to and did prevent many of the defects and vices of the English system of land tenure and intestate succession from becoming a part of our law. We have continued a definition of the word "issue," which the courts of England adopted, with reluctance, and only because their laws would not permit an avenue of escape, without doing substantial injustice, when a definition according to our own laws of descent and distribution would have furnished the very avenue of escape that the English judges sought but could not find in their law. For these reasons, if I were not controlled by the decisions of the Court of Appeals, I would construe the word "issue" when not controlled by the context of the will to mean lineal descendants capable of inheriting or succeeding to the property under our Decedent Estate Law, and that the issue take in the manner therein provided, when of equal degree, *per capita.* When of unequal degree, the remoter degree take by representation the share that would have fallen to their ancestor in the other class if living. Within each class the distribution *inter sese* to be *per capita.* In the instant case there being no children of deceased children of John Petry, the eight children would take each a one-eighth part of the portion of the trust estate devised and bequeathed to the issue of the deceased brother of the testator. This rule is the rule in Massachusetts. (*Dexter* v. *Inches, supra; Jackson* v. *Jackson,* 153 Mass. 374; *Coates* v. *Burton,* 191 id. 180; *Silsbee* v. *Silsbee,* 211 id. 105.) In *Matter of Farmers' Loan & Trust Co.* (*supra*) the court quoted with approval and applied *Dexter* v. *Inches,* and in affirming this court in *Matter of Union Trust Co.* (*supra*) have shown an inclination to abandon the rule laid down so clearly in

*Soper* v. *Brown* (*supra*). We can only express the hope that the Court of Appeals will do so. Until they do we are compelled to follow the earlier decisions, and affirm this judgment, with costs to all parties filing briefs in this court payable out of the portion of the estate devised and bequeathed to the issue of John Petry.

CLARKE, P. J., LAUGHLIN, SHEARN and MERRELL, JJ., concurred.

Judgment and order affirmed, with costs to all parties filing briefs herein payable out of the portion of the estate devised and bequeathed to the issue of John Petry. :