CENTRAL HANOVER BANK AND TRUST COMPANY, Respondent, *v.* HAMILTON PELL et al., as Administrators with the Will Annexed of ALICE B. PELL, Deceased, et al., Appellants; REYNAL DE ST. M. THEBAUD, JR., Respondent, Impleaded with Others.

(Argued June 10, 1935; decided July 11, 1935.)

*Joseph R. Kelley* and *Ignatius M. Wilkinson* for appellants. The deed of trust clearly provides by its terms for a distribution of the entire remainder to the appellants in equal parts. (*Matter of Farmers Loan & Trust Co. (Durant)*, 231 N. Y. 41; *Matter of Union Trust Co.*, 170 App. Div. 176; 219 N. Y. 537; *Matter of Lawrence*, 238 N. Y. 116; *Matter of Mortimer*, 147 Misc. Rep. 543; *Matter of Pond*, 133 Misc. Rep. 242; *Matter of Farmers Loan & Trust Co.*, 213 N. Y. 168; *Dexter* v. *Inches*, 147 Mass. 325.) The deed of trust is barren of any evidence of an intent to distribute among issue *per capita*. (*Fleischman* v. *Furgueson*, 223 N. Y. 235; *Matter of Farmers Loan & Trust Co.* [*Durant*], 231 N. Y. 41; *Matter of Farmers Loan & Trust Co.*, 213 N. Y. 168; *Matter of Union Trust Co.*, 170 App. Div. 176; 219 N. Y. 537; *Dexter* v. *Inches*, 147 Mass. 325; *Petry* v. *Petry*, 186 App. Div. 738; 227 N. Y. 621; *Vincent* v. *Newhouse*, 83 N. Y. 505; *New York Life Ins. Co.* v. *Winthrop*, 237 N. Y. 93.)

*Frank Delaney* and *Michael J. Kiely, Jr.*, for defendant-respondent. A direction to distribute among " issue " requires a *per capita* distribution unless a contrary intent appears in the instrument. (*Matter of Silsby,* 229 N. Y. 396; *Soper* v. *Brown,* 136 N. Y. 244; *Schmidt* v. *Jewett,* 195 N. Y. 486; *Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125; *Drake* v. *Drake,* 134 N. Y. 220; *Kernochan* v. *Whitney,* 125 App. Div. 371; *Chwatal* v. *Schreiner,* 148 N. Y. 683; *Rasquin* v. *Hamersley,* 152 App. Div. 522; *Petry* v. *Petry,* 186 App. Div. 738; *Matter of Mann,* 138 Misc. Rep. 42; *Matter of Farmers Loan & Trust Co.* [*Durant*], 231 N. Y. 41; *Matter of Lawrence,* 238 N. Y. 116; *Matter of Flint,* 118 Misc. Rep. 134; *Matter of Farmers Loan & Trust Co.,* 213 N. Y. 168; *Matter of Carroll,* 153 Misc. Rep. 649.) A direction to distribute among " the respective issue, in equal parts " imports a *per capita* distribution. (*Matter of Bailey,* 124 Misc. Rep. 466; *Matter of Moody,* 122 Misc. Rep. 541; *Matter of Trombly,* 138 Misc. Rep. 220; *Matter of Droney,* 231 App. Div. 674; *Matter of Verplanck,* 91 N. Y. 439; *Stevenson* v. *Lesley,* 70 N. Y. 512; *Matter of Farmers Loan & Trust Co.,* 213 N. Y. 168; *Bisson* v. *W. S. R. R. Co.,* 143 N. Y. 125.) The word " issue " must be given its normal meaning under the law existing at the time the deed of trust was executed. (*Tier* v. *Pennell,* 1 Edw. Ch. 354; *Murray* v. *Bronson,* 1 Dem. 217; *Matter of Cornell,* 5 Dem. 88; *Post* v. *Horning,* 6 N. Y. St. Repr. 716; *U. S. Trust Co.* v. *Tobias,* 21 Abb. N. C. 392; *Drake* v. *Drake,* 3 N. Y. Supp. 760; 56 Hun, 590; *Matter of Mann,* 138 Misc. Rep. 42; *Matter of Corlies,* 150 Misc. Rep. 596.)

FINCH, J. In 1889 various members of the Bates family executed and delivered to a trustee a deed of trust, providing for the payment of the entire income for life to Albertina M. Bates (herein referred to as the " primary beneficiary "). Upon her death, the deed provided for the establishment of five equal trusts for

the benefit of five persons named therein, including Alice Bates Pell. Albertina M. Bates was the widow of Martin Bates, Jr., and Alice Bates Pell and the four other persons named as beneficiaries of the separate trusts were children of the said Martin Bates, Jr., and Albertina M. Bates. These five beneficiaries are hereinafter referred to as " the secondary beneficiaries."

The deed of trust provided that at the death of Alice Bates Pell her share should be paid over to her " respective issue, in equal parts." Albertina M. Bates died shortly after the execution of the deed. In 1933, Alice Bates Pell died, leaving two children, Alice B. Tainter and Hamilton Pell. Alice B. Tainter has three children and one grandchild. Her brother, Hamilton Pell, has no issue. This action, while brought for the judicial settlement of the accounts of the plaintiff, as trustee under the deed of trust, actually involves the question of who is entitled to share in the remainder of the trust for Alice Bates Pell. The learned Special Term has held, as has the Appellate Division, with two justices dissenting, that the language in the deed granting the remainder to the issue of the deceased beneficiary in equal parts imported a *per capita* distribution to all descendants, in whatsoever degree. In consequence, the infant respondent, the great grandson of the deceased beneficiary, shares equally in the remainder with the appellants, his grandmother, Alice B. Tainter, and his grand uncle, Hamilton Pell, both of whom are still living. The effect of this decision is to allocate to Mrs. Tainter, her children and her grandchild eighty-three and one-third per cent of the remainder, while Mr. Pell, her brother, receives sixteen and two-thirds per cent, notwithstanding his equality in degree of relationship to Alice Bates Pell. In terms of dollars, the decision allocates to Mrs. Tainter's side of the Pell family $350,000 and to Mr. Pell $70,000, the same amount as that of the infant respondent, his grand nephew. No question arises as to the rights of the

children of Alice B. Tainter, including the respondent's mother, for the reason that they have relinquished all claims in favor of the appellants.

The correctness of the decision depends solely upon the proper construction and interpretation of the deed of trust.

The principles applicable are clear and have been many times reiterated. The word " issue " in its strict legal sense, for reasons largely historical, generally is construed to include all descendants, in all degrees. (*Petry* v. *Petry*, 186 App. Div. 738; affd., 227 N. Y. 621.) When the word " issue," therefore, is found in a formal legal document, with nothing in the text to modify it, it is entitled to its strict legal meaning. To this course the courts have felt constrained by authority. When, however, there is a slight indication of another meaning being intended, the courts readily deviate from this presumption of *per capita* distribution. In other words, a gift to issue will be distributed *per stirpes* whenever there is slight evidence that the author so desired, because that mode of distribution is often more equitable and works less hardship and inequalities.

In *Matter of Farmers' Loan & Trust Co.* (213 N. Y. 168, 173) the court said: " The presumption in this state favors a *per capita* distribution (*Schmidt* v. *Jewett, supra; Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125), but the presumption yields to ' a very faint glimpse of a different intention.' (*Ferrer* v. *Pyne*, 81 N. Y. 281, 284; *Vincent* v. *Newhouse*, 83 N. Y. 505, 513; *Bisson* v. *West Shore R. R. Co., supra.*) "

Applying these principles to the case at bar, we find that this deed when properly construed provided for a distribution to issue *per stirpes*, and not *per capita*. The language of the instrument, in two related instances, clearly shows an intent upon the part of the grantors to provide for such distribution to issue, *per stirpes*, and no reason is shown to ascribe to them a different intent in

reference to the clause involved in the case at bar. Equality among those of equal degree in relationship is the keynote of the entire instrument. This is ruthlessly destroyed by a construction which provides for a distribution *per capita* among the immediate and remote descendants, while the immediate descendants are still living.

The deed of trust sets forth a comprehensive plan for the enjoyment of a substantial estate by Albertina M. Bates and her five sons and daughters and the ultimate distribution thereof among their issue. The deed first establishes an income for life from the whole fund for the widow, Albertina M. Bates. It then provides for the equal division of the fund into five separate trusts for the benefit of her five children. Up to this point it is clear that the authors of the deed intended absolute equality of enjoyment as among the five children of the primary beneficiary, according to their natural rights. The third and last part of the trust concerns the distribution of the principal of the trusts created for the benefit of the secondary beneficiaries " to their respective issue, in equal parts." The deed thus provided for the equal enjoyment and ultimate distribution according to natural rights and in the natural order of succession. First the widow of the head of the family was provided for; then her five children, separately and equally. Finally, on the natural supposition that the children, the secondary beneficiaries, would be survived by issue, provision was made for ultimate distribution of the separate funds to such issue, in equal parts. Two other contingencies were then provided for: that one or more of the secondary beneficiaries might die without issue at any time or that they might die leaving issue before the death of the primary beneficiary. Two paragraphs were added to the deed, providing for both contingencies. Should one or more of the secondary beneficiaries die at any time without issue, it was provided that the fund belonging to him or her should pass to the surviving secondary beneficiaries and

to the issue of any deceased secondary beneficiary who might have died leaving issue, such issue to take equally among them " the share their parent would have taken if alive." Here is evidence of a conscious purpose to maintain and preserve equality among the stocks. In like manner, it was provided that if a secondary beneficiary should predecease the primary beneficiary leaving issue, such issue should take upon the death of the primary beneficiary the share that would have gone to their parent if alive. The underlying purpose of the whole scheme was to provide for succession equally among the respective stocks springing from Martin Bates, Jr., and Albertina M. Bates.

Not only is there this underlying purpose to make equal gifts to those in the same degree of relationship, showing an intent to distribute *per stirpes*, but in the provisions for the issue of a deceased brother or sister to take equally among them, if more than one, the share their parent would have taken. if alive, the term " issue " is used in antithesis to the word " parent " and it is clearly intended to mean " children." It does not follow that under no circumstances could the more remote issue of Alice Bates Pell take as " issue." If one of her children had predeceased her, his or her children would be entitled to share by way of representation. Primarily the word " issue " is used in antithesis to " parent " and may be construed to mean " children." It is only secondarily, that is by way of representation, that more remote issue are embraced by the term. (*Matter of Farmers' Loan & Trust Co.*, *supra; Dexter* v. *Inches*, 147 Mass. 324.)

The respondent urges that a different intent may be assumed from an apparent difference in terminology, but in all three contingencies the same word, " issue," is used to describe the class entitled to the remainder. Consistency and harmony is more likely to be intended when all three provisions are in *pari materia* and relate to the distribution of the same remainders to the same classes

on the termination or failure of the same intermediate estates. No reason appears from the instrument itself requiring a different construction, but, on the contrary, the application of a different construction would result as heretofore noted in gross inequalities. If it is argued that the drafters of this deed carefully chose the language importing a *per stirpes* distribution in the other contingencies, in purposeful contrast to the contingency involved herein, why were they not equally precise in directing a *per capita* distribution in this instance? Is it to be presumed that they would have left a *per capita* distribution to hang on such a slender thread as the construction which they contend for of the word " issue," if the drafters were indeed conscious of any difference between the modes of distribution in the several contingencies? In such event, it would have been easy to grant the remainder to " issue in whatsoever degree " or easier still to grant it to " issue *per capita*." From their very failure to do so, is not the inference irresistible that they intended no difference whatever in the several contingencies? When they granted the remainder to issue in equal parts, did they not mean the same kind of equality that was manifest throughout the deed, namely, an equality among stocks? Harmony and consistency should not be disregarded in the name of equality and thereby work a gross inequality. In *Matter of Durant* (231 N. Y. 41, 50) it was said: " Consistency will, indeed, be sacrificed where intention, as revealed in context or surroundings, will thereby be promoted. The sacrifice will not be made to uphold a rule of distribution which yields to a ' faint glimpse ' of a contrary desire. (*Ferrer* v. *Pyne*, 81 N. Y. 281, 284; *Matter of Farmers' Loan & Trust Co., supra; .Petry* v. *Petry*, 186 App. Div. 738; 227 N. Y. 621.) "

The result which we have reached is in accord with several other decisions of this court in cases involving like circumstances. (*Matter of Farmers' Loan & Trust Co., supra; Matter of Durant, supra; Matter of Union*

*Trust Co. [Detmold]*, 170 App. Div. 176; affd., 219 N. Y. 537.) (Cf. *Matter of Lawrence*, 238 N. Y. 116.)

It follows that the judgment of the Appellate Division and that of the Special Term in so far as appealed from should be reversed and judgment rendered directing distribution of the undistributed balance of the remainder to the appellants in equal parts in accordance with this opinion, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS and LOUGHRAN, JJ., concur; CROUCH, J., not sitting.

Judgment accordingly.