BANK OF NEW YORK, as Trustee under the Will of MARY R. RAY, Deceased, Plaintiff, *v.* FREDERIC S. ALLEN, as Ancillary Administrator with the Will Annexed of MARY M. I. DUB. DE COURVAL, et al., Defendants.

Supreme Court, Special Term, New York County, March 21, 1947.

*Joseph K. Savage* for plaintiff.

*Williamson Pell, Jr.,* for Henri A. M. de Noailles and others, defendants.

*Louis M. Loeb,* guardian ad litem for infant defendants.

SHIENTAG, J. The question submitted to this court for decision is the proper distribution of the corpus of the trust fund created by article first of the will of Mary Rebecca Ray, dated April 12, 1872. Bank of New York, the trustee, in its complaint asks the court to construe this article and determine

whether the remainder of the trust on the death of Princesse de Poix passed to the Princesse's lawful issue her surviving, per stirpes or per capita.

The decedent, Mary Rebecca Ray, was survived by one daughter, Mary de Courval. Under the terms of article first of the decedent's will, her residuary estate was left in trust for this daughter during her life. The will then provides: " * * * after her death to pay or apply the income thereof or so much as shall be necessary in their judgment to the careful education and maintenance according to their station in life of the child or children of my said daughter until such child or children shall severally arrive of the age of twenty-one years, and to accumulate for their benefit any surplus income there may be not expended for their support as aforesaid. And when the oldest of such children shall have arrived at the age of twenty-one years, I direct my said Estate to be divided into as many shares as there shall be then living children and lawful issue of deceased children of my said daughter (such issue to be counted *per stirpes*) and to invest for the benefit of the child so arriving of age, one of said shares and to pay the income arising therefrom to such child during his or her natural life, and in the same manner as each of said children shall arrive of the age of twenty-one years to invest an equal share of the remainder of the Estate then existing for the benefit of such child, and to pay him or her the income thereof during his or her natural life.

" Upon the death of any of the children of my said daughter, the share of such child is to be divided equally among its lawful issue, and in the event of any such child dying without lawful issue, the same is to be divided equally between the brothers and sisters of said children then living, and the lawful issue of such as may then be dead, *per stirpes* and not *per capita.*

I hereby authorize and empower my said daughter to devise and bequeath all of that part of my said Estate the income of which is herein directed to be paid to her for life by a last Will and Testament or an instrument in the nature thereof, to take effect in the event of her dying without issue. * * * If any of the children of my said daughter shall die before reaching the age of twenty-one years, having lawful issue, I direct that such issue shall take the share its parent would have received if living."

To aid in the construction of article first, article second of the will is pertinent. This article reads as follows:

" Second: Should my daughter die before me leaving no issue to survive me or die after me leaving no issue and without having executed the power above given to her to dispose of my said Estate by a Last Will and Testament, then subject to the legacies herein given, I give, devise and bequeath all my Estate Real and Personal in the manner and form following:

" I give one equal moiety thereof to my said sister Julia Augusta Livingston for her life, without impeachment of waste, and on her death to her son James for his life, and upon his or upon the death of my said sister whichever shall first happen to his children in equal share.

" If any of his children shall have died before him, leaving issue, such issue to take the share the parent would have taken if living; If the said James leaves no children or descendants of children then I devise said share to the surviving issue of my Uncle Robert Boggs, deceased, *per stirpes* and by representation, and to take as if the said Robert had died immediately before the vesting of these devises and bequests.

" The said children and issue are now William Brenton Boggs, James Lawrence Boggs, Mary Rebecca Blauvelt, Edward Brenton Boggs, and the issue of Robert Morris Boggs, deceased, which children and their descendants shall exclude all my collateral relatives both on my father's and mother's side other than the issue of my sister or of my said Uncle Robert Boggs, deceased.

" I give the other moiety of my said Estate to my said sister for her life without impeachment of waste, and on her death to her son Lewis for his life, and upon his death or upon the death of my said sister, whichever shall first happen, to his children in equal shares. If any of his children shall have died before him leaving issue, such issue to take the share the parent would have taken if living. If the said Lewis leaves no lawful children or descendants of lawful children, then I devise said share to the surviving issue of my Uncle Robert Boggs, deceased, in the same manner in all respects as is hereinbefore provided for the other moiety of my Estate."

The decedent's daughter died on July 5, 1902, survived by an only child, the Princesse de Poix. Pursuant to the terms of the will, the trust was continued by Bank of New York for this child. Periodic accountings were held, the last account being settled to April 20, 1927, by a judgment of this court entered on December 28, 1927.

On October 29, 1944, the Princesse de Poix died and the trust for her benefit terminated and became distributable pur-

suant to article first of her grandmother's will. The Princesse was survived by three children, who take if it is determined that the property passes per stirpes, and by nine grandchildren and two great-grandchildren who would all share equally with the three children of the Princesse if it should be held that the fund passes per capita. The fund would then be divided into fourteen parts instead of into three. Another grandchild who would not share was born on September 26, 1946.

The term "issue" standing alone with nothing to modify it includes includes all descendants in whatsoever degree and connotes a per capita distribution. This is a doctrine of the common law which is applied in this State to all wills of persons dying prior to April 30, 1921. On that date the common law was changed by statute, section 47-a of the Decedent Estate Law, to eliminate this inequitable doctrine (L. 1921, ch. 379). Probably for constitutional reasons the change was not made retroactive and does not apply to the will of Mary Rebecca Ray, which antedated this section by many years. However, long prior to the amendment to the statute, the courts had appreciated the harshness and inequity of this presumption, founded upon the strict logic and metaphysics of the Middle Ages. The courts have sought in all instances where possible to construe "issue" so that the property passes per stirpes, and have scanned each will for some indication of an intention to that effect. Judges have been anxious to find the "'very faint glimpse of a different intention'" (*Ferrer* v. *Pyne,* 81 N. Y. 281, 285), that the property should pass per stirpes. The recent case of *Central Hanover Bank & Trust Co.* v. *Pell* (268 N. Y. 354) is the leading pronouncement on this subject. Dealing with the per capita presumption, the court states (p. 358): "To this course the courts have felt constrained by authority. When, however, there is a slight indication of another meaning being intended, the courts readily deviate from this presumption of *per capita* distribution. In other words, a gift to issue will be distributed *per stirpes* whenever there is slight evidence that the author so desired, because that mode of distribution is often more equitable and works less hardship and inequalities."

A consideration of the Ray will shows that there is much more than the "'faint glimpse'" of an intent that the cases require; there are persuasive indications that the testatrix intended the trust to pass in per stirpital fashion. After the death of the testatrix' daughter, the fund was to be held in further trust for the daughter's children, and the income

was to be used for their benefit. When the oldest child, grand-child of the testatrix, reached twenty-one, there was to be a division " into as many shares as there shall be then living children and lawful issue of deceased children of my said daughter (such issue to be counted *per stirpes*) * * *." This is a disposition to the daughter's children and for grand-children, great-grandchildren of the testatrix. This division is to be made " per stirpes " and under the last provision of article first, the property is to pass to them outright, for this sentence directs: " If any of the children of my said daughter shall die before reaching the age of twenty-one years, having lawful issue, I direct that such issue shall take the share its parent would have received if living."

Under these provisions, had there been children of deceased children living at the time of the death of one of the children of the primary life tenant, they would have taken and taken per stirpes, as therein provided, and also as necessarily implied in the outright gift; it would have been impossible for a per capital distribution to have been made to the issue of children dying under twenty-one, since such issue could not, by the nature of things, have had grandchildren. Hence, we find one absolute and definite gift in one eventuality to the great-grand-children of the decedent per stirpes.

A consideration of article second of the will strengthens the conclusion derived from article first. In article second dece-dent's will makes provision for her daughter's dying without issue. In such case one half of the residue is to be held in trust for testatrix' sister, Julia, for life, and on Julia's death for Julia's son, James, for life, and upon his death to his children. However, should any of his children have died before him " leaving issue, such issue to take the share the parent would have taken if living." Here is a substantial gift to issue, and such a gift standing alone is given a per stirpital construction by the courts. As stated in section 673 of Davids on New York Law of Wills (pp. 1128–1129): " A substitu-tionary provision imports an intention to have a stirpital divi-sion or distribution of the property. Thus, where the will creates a life estate or trust, gives the remainder or corpus to two or more individuals, and provides for the substitution of issue in case of the death of either or any previously to the time of possession or enjoyment, the issue of one of the primary takers, who has died during the period of the preceding estate, are held to share *per stirpes* in the division of the property. Likewise, in the case of a gift over to a class, or to the survivors

of designated individuals, accompanied by a provision for the substitution of issue, the issue of one who has died during the period of the preceding estate are held to take *per stirpes*. The same force attaches to a provision that the descendants of the primary takers shall have an equal portion of the property.''

The will then provides that if James leaves no children or descendants of children, the property is to go to the surviving issue of decedent's uncle, Robert Boggs, deceased, '' *per stirpes* and by representation, and to take as if the said Robert had died immediately before the vesting of these devises and bequests.'' The substitutional gift, coupled with this gift to the issue of Robert Boggs, shows the tenor of the will. The testatrix thinks· throughout in the terms of per stirpital distribution. Nowhere is there an indication of an intent to dispose of the property per capita.

The other half of the decedent's estate is disposed of in almost identical wording, except that the decedent's sister's son Lewis and his issue are substituted for James.

Article second constitutes an unequivocal disposition of decedent's property among her collateral relatives in per stirpital fashion in certain eventualities. There is no ambiguity or uncertainty in the use of language. When article first is considered in the light of article second, it seems clear that equality of division was intended and that issue was used throughout the will in a sense of issue per stirpes.

The particular paragraph dealing with the eventuality which has in fact occurred reads as follows: '' Upon the death of any of the children of my said daughter, the share of such child is to be divided equally among its lawful issue, and in the event of any such child dying without lawful issue, the same is to be divided equally between the brothers and sisters of said children then living, and the lawful issue of such as may then be dead, *per stirpes* and not *per capita*.''

This gift contained in a single sentence ends with a definition of issue which is set off from the rest. of the sentence by a comma. The punctuation appearing in this sentence shows that the testatrix intended this definition of issue to apply to issue wherever used in the sentence. The conclusion that issue should be given the same meaning throughout the sentence is inescapable.

One of the arguments advanced by the guardian for a per capita construction is that the testatrix was aware of the distinction between per capita and per stirpes and called for a per stirpital distribution only where she specifically used the

words " per stirpes ". Such an argument was dealt with by FINCH, J., in *Central Hanover Bank & Trust Co.* v. *Pell* (268 N. Y. 354, 361, *supra*): " If it is argued that the drafters of this deed carefully chose the language importing a *per stirpes* distribution in the other contingencies, in purposeful contrast to the contingency involved herein, why were they not equally precise in directing a *per capita* distribution in this instance? Is it to be presumed that they would have left a *per capita* distribution to hang on such a slender thread as the construction which they contend for of the word ' issue, ' if the drafters were indeed conscious of any difference between the modes of distribution in the several contingencies? In such event, it would have been easy to grant the remainder to ' issue in whatsoever degree ' or easier still to grant it to ' issue *per capita.*' From their very failure to do so, is not the inference irresistible that they intended no difference whatever in the several contingencies? When they granted the remainder to issue in equal parts, did they not mean the same kind of equality that was manifest throughout the deed, namely, an equality among stocks? Harmony and consistency should not be disregarded in the name of equality and thereby work a gross inequality."

The court directs, therefore, that distribution shall be made per stirpes to the three adult children of the Princesse de Poix. They having approved the account of the trustee, judgment may be entered construing the will and settling the account of the trustee in accordance with the foregoing determination. Settle judgment on notice which shall contain a provision for the payment of fees, costs and disbursements.