In the Matter of the Appointment of an Ancillary Successor Trustee under the Will of BRENT GOOD, Deceased, and for Construction of Said Will. HENRY H. HOYT, JR., et al., Appellants; HENRY H. HOYT et al., Respondents.

Argued January 22, 1952; decided April 23, 1952.

*Joseph M. Proskauer, Albert R. Jube* and *Charles Looker* for appellants. I. The New York courts should follow the determination of the Supreme Court of New Jersey that " issue " means " descendants per capita ". (*Matter of Krooss,* 302 N. Y. 424; *Monypeny* v. *Monypeny,* 202 N. Y. 90; *Hawley* v. *James,* 7 Paige Ch. 213; *Lowe* v. *Plainfield Trust Co.,* 216 App. Div. 72; *White* v. *Howard,* 46 N. Y. 144; *Roessle* v. *Roessle,* 163 App. Div. 344; *Minot* v. *Minot,* 17 App. Div. 521; *Greenwood* v. *Page,* 138 F. 2d 921; *Matter of Battell,* 286 N. Y. 97; *Matter of Neill,* 195 Misc. 690; *Cary* v. *Carman,* 116 Misc. 463; *Matter of Barker,* 230 N. Y. 364; *Matter of Dialogue,* 159 Misc. 18.)

II. The New York per capita presumption has not been over-come. (*Soper* v. *Brown*, 136 N. Y. 244; *Matter of Lawrence*, 238 N. Y. 116; *Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168.) III. The doctrine of equitable conversion is applicable. (*Dodge* v. *Pond*, 23 N. Y. 69; *Power* v. *Cassidy*, 79 N. Y. 602; *Salisbury* v. *Slade*, 160 N. Y. 278.)

*Harold L. Smith* and *L. Edwin Smart, Jr.*, for Brent G. Orcutt, respondent. I. The question whether Kate's issue take the New York real property per stirpes or per capita is governed by New York law. (*Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168; *Matter of Durant*, 231 N. Y. 41; *Central Hanover Bank & Trust Co.* v. *Pell*, 268 N. Y. 354; *Dennis* v. *Dennis*, 86 N. J. Eq. 423; *Inglis* v. *McCook*, 68 N. J. Eq. 27; *De Vaughn* v. *Hutchinson*, 165 U. S. 566; *Lowe* v. *Plainfield Trust Co.*, 216 App. Div. 72; *Petry* v. *Petry*, 186 App. Div. 738, 227 N. Y. 621; *Soper* v. *Brown*, 136 N. Y. 244; *Freeman* v. *Parsley*, 3 Ves. Jr. 421; *Whitehead* v. *Ginsburg*, 197 App. Div. 266; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *McCartney* v. *Osburn*, 118 Ill. 403; *Roessle* v. *Roessle*, 163 App. Div. 344; *Fidelity Union Trust Co.* v. *Ackermän*, 123 N. J. Eq. 556; *Clarke* v. *Clarke*, 70 Conn. 195, 483, 178 U. S. 186; *Minot* v. *Minot*, 17 App. Div. 521.) II. Under New York law, Kate's issue take per stirpes. (*Matter of Lawrence*, 238 N. Y. 116; *Matter of Farmers' Loan & Trust Co.*, 213 N. Y. 168; *Central Hanover Bank & Trust Co.* v. *Pell*, 268 N. Y. 354; *Matter of Durant*, 231 N. Y. 41; *Matter of Smith*, 254 N. Y. 283; *Matter of Union Trust Co.* [*Detmold*], 170 App. Div. 176, 219 N. Y. 537.) III. The New York real property was not made distributable as personal property under New Jersey law by equitable conversion. (*Clarke* v. *Clarke*, 178 U. S. 186; *White* v. *Howard*, 46 N. Y. 144; *Matter of Tatum*, 169 N. Y. 514; *Hobson* v. *Hale*, 95 N. Y. 588; *Thompson* v. *Hart*, 58 App. Div. 439; *Story* v. *Palmer*, 46 N. J. Eq. 1; *Kahn* v. *Tierney*, 135 App. Div. 897, 201 N. Y. 516.)

CONWAY, J. This is an appeal pursuant to leave granted by this court, from an order of the Appellate Division, First Department, which unanimously affirmed so much of a decree of the Surrogate's Court, New York County, as construed a remainder to the " issue " of the life beneficiary of a trust, to pass to her descendants per stirpes, rather than to her

descendants per capita. All of the real property situated in New York has been administered by the ancillary trustees under the supervision of the New York Surrogate's Court. Property having a situs in New Jersey has been administered there. The life beneficiary of the trust, who is now dead, was Kate Good Orcutt, a daughter of the testator and hereinafter referred to as Kate. If distribution of the principal of the trust is to be made per stirpes, the remainder will be divided equally between the two children of Kate, Brent and Anna. If distribution be per capita, the remainder will be divided into five equal parts: one part will go to the son of Kate, one to her daughter Anna, and three to her grandchildren, the children of Anna.

The testator made and executed his will in New Jersey, where he was domiciled, in 1913. When he died in 1915, still domiciled there, he was the owner of real property in New York, New Jersey and Colorado. The will was admitted to probate in New Jersey and ancillary letters testamentary were issued by the Surrogate's Court of New York County. At the time of his death, testator's family consisted of (1) his second wife Frances, (2) his son Harry and his daughter Kate who were children of his first wife who had died in 1894, and (3) two grandchildren named Brent and Anna who were children of his daughter. Brent and Anna were fourteen and twelve years of age respectively. We are concerned also with the three great-grandchildren of testator who are children of his granddaughter Anna but who were born, long after the testator's death, in 1927, 1929 and 1934.

After providing gifts of personalty to his wife and daughter, the testator provided in his will that his residuary estate be divided into three equal shares or parts and that there be added to them from time to time, proportionately, the net proceeds of the sale of real or personal property, or other property suitable for division, as though such property had been originally included. One of those shares was to be set aside for his wife Frances from which she was to receive $10,000 of income each year for life with the balance of the income payable to his daughter Kate until the death of his wife, "but should my said daughter predecease me or my said wife, then, in either event, to the surviving issue of my said daughter, for his, her and their use and benefit." Upon the

death of his wife that share of his estate, with accumulations, was to go to his daughter Kate absolutely but in the event that his daughter predeceased him or died before the decease of his wife, the share was to go to the " surviving issue of my daughter as and for his, her and their absolute property."

Another share was set apart for testator's son Harry who was to receive $5,000 of income each year with the balance of the income payable to the daughter Kate during Harry's lifetime with the proviso that " should my said daughter predecease my said son, then to the surviving issue of my said daughter, for his, her and their own use and benefit." Upon the death of the son Harry that share of the estate, with accumulations thereon, was to be transferred and delivered to the daughter Kate absolutely but if she died prior to the testator or before the decease of Harry then that share was to go to " the surviving issue of my said daughter, as and for his, her and their absolute property."

The third part or share, and it is only as to that that we are concerned here, was to go to the daughter Kate with income for life and upon her death, or should she predecease the testator, that share was to be transferred and delivered to " the surviving issue of my said daughter."

There is no claim of *res judicata* urged here since the New Jersey Chancery Court expressly excluded from its consideration the real property in New York and Colorado, saying: " that matter is governed by the law of the States in which the property is situated. *Fidelity Union Trust Company* v. *Ackerman*, 123 N. J. Eq. 556 ". (59 A. 2d 17, 22–23.)

The common-law rule, as to which there appears to have been no exceptions, was that the validity of a devise of real property, and all questions relating to the title to the property, were to be determined by the laws and courts of New York regardless of the domicile of the testator. (*White* v. *Howard*, 46 N. Y. 144, 159; *Peck* v. *Cary*, 27 N. Y. 9, 11.) Subsequently we codified the law in what is now section 47 of the Decedent Estate Law. The section as applicable here at the time of testator's death read: " § 47. *Validity and effect of testamentary dispositions.* The validity and effect of a testamentary disposition of real property, situated within the state, or of an interest in real property so situated, which would descend to

the heir of an intestate, and the manner in which such property or such an interest descends, where it is not disposed of by will, are regulated by the laws of the state, without regard to the residence of the decedent.  Except where special provision is otherwise made by law, the validity and effect of a testamentary disposition of any other property situated within the state, and the ownership and disposition of such property, where it is not disposed of by will, are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death.''

The general rule throughout the country was the same as our common-law rule.  (*Clarke* v. *Clarke,* 70 Conn. 195, 483, affd. 178 U. S. 186.)  There the Supreme Court quoted with approval from *De Vaughn* v. *Hutchinson* (165 U. S. 566, 570) in holding to the contrary of a contention which it posed as follows (p. 191) : '' The proposition relied on, therefore, is this, although the court of last resort of Connecticut (declaring the law of that State) has held that the real estate in question had not become personal property by virtue of the will of Mrs. Clarke, nevertheless it should have decided to the contrary, because a court of South Carolina had so decreed.  This, however, is but to argue that the law declared by the South Carolina Court should control the passage by will of land in Connecticut, and therefore is equivalent to denying the correctness of the elementary proposition that the law of Connecticut where the real estate is situated governed in such a case.''

The quotation from *De Vaughn* v. *Hutchinson* (*supra,* p. 570), was as follows: '' It is a principle firmly established that to the law of the State in which the land is situated we must look for the rules which govern its descent, alienation and transfer, and for the effect and construction of wills and other conveyances.''

To the same effect are: *Fidelity Union Trust Co.* v. *Ackerman* (123 N. J. Eq. 556); *Olmsted* v. *Olmsted* (216 U. S. 386); *McCartney* v. *Osburn* (118 Ill. 403); Beale's Conflict of Laws (Vol. 2, §§ 251.3, 251.4, pp. 974–975).

In *McCartney* v. *Osburn* (*supra*) the Pennsylvania courts had determined that the division of property under a devise of realty should be per stirpes.  The Illinois court, as to realty there, refused to follow and said (p. 411).: '' it becomes neces-

sary to examine the will for ourselves, and give it that construction which, in the light of the authorities, we believe will best effectuate the testator's intentions in disposing of his property.'' In Illinois there was a rule of presumption giving a devise a per capita effect in the absence of a contrary intention. Finding on its independent investigation no evidence of contrary intent, the Illinois court held that the division was to be per capita. In the course of its opinion, the court aptly said (p. 411): ''Where a testator, by a single will, devises lands in two or more States, the courts of such States will respectively construe it as to the lands situated in them, respectively, in the same manner as if they had been devised by separate wills.'' (See, also, *Putnam* v. *Lincoln Safe Deposit Co.,* 191 N. Y. 166, 182, 183; *Monypeny* v. *Monypeny,* 202 N. Y. 90, 92; *Roessle* v. *Roessle,* 163 App. Div. 344; *Lowe* v. *Plainfield Trust Co.,* 216 App. Div. 72, 75; 32 Cyc. 674.)

Up until 1921, both in New York and New Jersey, the presumption was that the word '' issue '' when used, as it was here, as a word of purchase, included descendants in any degree unless some other meaning was given to it by the context, and there were no indications that it was used in any other than its legal sense. (*Soper* v. *Brown,* 136 N. Y. 244; *Schmidt* v. *Jewett,* 195 N. Y. 486; *Matter of Farmers' Loan & Trust Co.,* 213 N. Y. 168.) In New Jersey the testator was required to evidence his intention clearly before the courts read his use of the word '' issue '' as meaning descendants per stirpes. In New York State it was sufficient to cause the common-law per capita presumption to yield that there be '' ' a very faint glimpse of a different intention.' '' (*Ferrer* v. *Pyne,* 81 N. Y. 281, 284; *Matter of Farmers' Loan & Trust Co., supra,* pp. 173, 174.)

In satisfying himself that he had found more than a faint glimpse of an intent on the part of the testator to have his real property pass per stirpes, the learned Surrogate examined the wording used in setting up the trusts for Frances, the widow, and Harry, the son, and determined that in each there was a substitutional devise to the issue of Kate, his daughter. The Surrogate held that such substitutional devise indicated an intention that the issue were to take by representation per stirpes rather than per capita. (See *Matter of Farmers' Loan &*

*Trust Co., supra; Central Hanover Bank & Trust Co.* v. *Pell,* 268 N. Y. 354; *Matter of Lawrence,* 238 N. Y. 116; *Matter of Durant,* 231 N. Y. 41.) He wrote succintly: '' We shall consider first the trusts for the wife and the son. In those trusts it is clear that the issue of the daughter take as her representatives. If the daughter survived (as in fact she did) she was to take all the excess income in both trusts and the entire corpus. If she had died during the trust term, her surviving issue would have been substituted for her with respect to excess income and principal. ' The inference seems inevitable that [issue] were thought of as the parents' representatives, succeeding either by representation or by substitution to the enjoyment of the parents' share. Such a scheme of distribution is inconsistent with a gift per capita ' (Cardozo, J., Matter of Lawrence, 238 N. Y., 116, 120).''

Having reached the conclusion that the language in those two trusts for the widow and son permitted the inference of an intent to devise per stirpes and since he found that the similarity of the language in all three trusts indicated an identity of purpose and intent, the Surrogate determined that the identical term '' issue '' did not lose its meaning in the disposition of the remainder of the daughter's trust and that therefore in all the trusts the issue were to take by representation. With that we agree.

The New Jersey Supreme Court in a unanimous opinion decided that under New Jersey law there was nothing in the will '' from which it could be inferred that the testator intended a distribution contrary to the natural effect of the words used, which it is conceded have a well defined meaning in our law ''. (1 N. J. 454, 458.)

There is, indeed, no doubt of the fact that the common-law presumption today in New Jersey, and in New York up to 1921, was as we have indicated (*supra,* p. 116). Since 1921, the contrary presumption has existed in our State because we then added section 47-a to the Decedent Estate Law. That section was passed long after testator's death and has no application here. It reads as follows: '' 47-a. *Issue to take per stirpes.* If a person dying after this section takes effect shall devise or bequeath any present or future interest in real or personal property to the ' issue ' of himself or another, such issue shall,

if in equal degree of consanguinity to their common ancestor, take per capita, but if in unequal degree, per stirpes, unless a contrary intent is expressed in the will.''

The situation thus presented poses the question as to which law is to control the disposition of the New York realty. Is it the law of the situs or the law of testator's domicile? Much of what has been said above is not disputed by appellants but they urge that many of the cases discussed may be distinguished because either (1) the situs of the realty and the domicile of the particular testator were identical, or (2) rules of property, such as (a) the Rule against Perpetuities, (b) the validity of a devise to charities, (3) a statute protecting an afterborn child from disinheritance, (4) a widow's dower, etc., were involved and the testator's intent was thus immaterial. They further urge that here the intention of the testator is to be obtained by interpreting the meaning of words used by him and that at the time of the execution of the will and '' at the time of his death ' issue ' was a technical word of art meaning ' descendants per capita ' ''; that the question is not one of legal effect but of ascertainment of intent and that the determination of the court of the State of testator's domicile on the meaning of the devise is controlling.

But we have written that in following the per capita presumption we had little reason to believe that we were giving effect '' to a purpose genuinely willed. What we did was to enforce a *rule of property* which from the use of certain words imputed to the testator a particular intention, whether present in his mind or not, unless, indeed, a contrary intention was in some other way disclosed.'' (Emphasis supplied.) (*New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93, 109.) It has been written that the per capita presumption is a result of legal history and is followed despite a testator's probable intention to the contrary. (*Central Hanover Bank & Trust Co.* v. *Pell,* 268 N. Y. 354, 358, *supra; Petry* v. *Petry,* 186 App. Div. 738, 741, 742, affd. 227 N. Y. 621; *Freeman* v. *Parsley,* 3 Ves. Jr. 421; *Dexter* v. *Inches,* 147 Mass. 324.) At any rate it is a rule of property and '' one not of intention in the proper sense, but of the legal implications of one formula or another '' (*New York Life Ins. & Trust Co.* v. *Winthrop, supra,* p. 109). Moreover, there is no doubt of the meaning of '' issue ''. It means descendants in every degree. As long ago as 1797 it was defined by the Chan-

cellor as follows: " In the common use of language as well as the application of the word ' issue ' in wills and settlements it means all indefinitely." (*Freeman* v. *Parsley, supra*, p. 423.) The word " issue " is neutral, connoting neither a division per capita nor per stirpes. It is the common-law rule of presumption which gives a per capita effect to it. It is a contextual use of it that gives it a per stirpes effect. If " issue " is written in the will and there is nothing more, the rule of presumption gives the writing a per capita operating effect in each State — the rule of presumption breathes a per capita legal effect into the language as used. If " issue " is written but in addition there is evidence of stirpital intent, the rule of presumption yields — more readily in New York than in New Jersey — and again a legal effect, this time a per stirpes effect, is given to the language of the testator. As to real estate in New York that effect is regulated by statute in our State. (Decedent Estate Law, § 47.) We have said under the predecessor statute (Code Civ. Pro., § 2694; see, also, § 1866) that our courts determine interpretation and effect. Thus in *Monypeny* v. *Monypeny* (202 N. Y. 90, 92, Cullen, Ch. J., *supra*), we wrote: " There can be no question that, though the will was made in Ohio [by one domiciled there], its interpretation and effect, so far as it relates to the real property within this State, is to be determined by the courts of this State and that their decision is conclusive." So we made our own independent investigation of the intent of an Ohio testator in *Putnam* v. *Lincoln Safe Deposit Co.* (191 N. Y. 166, 182–183, *supra*). Again, in *Roessle* v. *Roessle* (163 App. Div. 344, 347, *supra*), New York determined that there was no intention that a devise be " in lieu of dower " although a statute of testator's domicile in the District of Columbia provided that such a devise should be " construed to be intended in bar of her dower  *  *  *  unless it be otherwise expressed in the will " and it was conceded that the widow's dower was there barred.

Thus we must say that if the word " issue " were used and nothing more appeared, it is clear that the New York courts would determine the effect as a result of statutory provision. If, in addition to the use of the word " issue ", it appears from the words used by the testator in his will and the circumstances known to him when the will was made (*Matter of Neil*, 238 N. Y.

138; *Matter of Smith,* 254 N. Y. 283, 289) that his intention was that the property should pass per stirpes, the *effect* would still be determined by our courts pursuant to the command of the same statute — section 47 of the Decedent Estate Law.

We agree with the courts below that we are dealing here with real property and that there was no equitable conversion requiring distribution of personalty. The will conferred on the trustees a discretionary power of sale. In the absence of an imperative direction to sell, there is no equitable conversion. (*Matter of Tatum,* 169 N. Y. 514, 518; 4 Pomeroy's Equity Jurisprudence [5th ed.], § 1160.)

The order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the trust.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Order affirmed.